JOHNSON, P. J.
 

 This is an appeal by an execution creditor of the defendant J. W. Eder from an order determining title to a motor tow-car to be in Harry Beyer, who interposed a third-party claim.
 

 It appears that Eder and Beyer had been partners in a garage business conducted under the name of Acme Garage. The partners having decided to dissolve their partnership, it was agreed between them that the interest of Beyer should be purchased by Eder, who should execute to Beyer a promissory note in the principal sum of $1500 secured by a chattel mortgage of all the garage equipment, including the otowear. Notice of such intended sale by Beyer and of such intended mortgage by Eder was duly given, and was recorded in the office of the recorder on April 26, 1935. On May 4th, at the time fixed in the notice, the transaction was consummated. Eder then executed in favor of Beyer a promissory note for $1500, payable with interest in monthly installments; and as security for such payments he executed a chattel mortgage of the garage equipment including the tow-car. The mortgage was dated May 4, 1935, and was recorded that same day in the recorder’s office. No copy of the mortgage was at any time deposited with the department of motor vehicles, as then prescribed in section 451/4 of the California Vehicle Act of 1933, and now in section 195 of the Vehicle Code of 1935; nor was any change made in registration of the car, which was in Eder’s name.
 

 Eder having made default in payments under his promissory note, Beyer took possession of the mortgaged property on November 18, 1935, as authorized by the chattel mortgage; and at a public sale, duly held at Beyer’s instance on December 5th, he became the purchaser of the tow-car and the rest of the property listed in the mortgage.
 

 On December 14th Chelhar obtained judgment against Eder for $550 with interest and costs; and on December 16th he caused execution to issue and seizure thereunder to be made of the tow-car, then in Beyer’s possession. By reason of such seizure Beyer on December 17th filed his third-
 
 *Supp. 777
 
 party claim; and after a hearing, title was on January 20, 1936, determined to be in Beyer.
 

 The question arising on the appeal from that order is whether failure of Beyer to comply with section
 
 45%
 
 of the California Vehicle Act of 1933 (which was in effect at the time of the mortgage), rendered the chattel mortgage of the tow-car, and the subsequent foreclosure sale thereof to Beyer, invalid as against Eder’s execution creditor.
 

 As to chattel mortgages in general, section 2957 of the Civil Code declares that such a mortgage is void as against creditors of the mortgagor, and subsequent purchasers and encumbrancers in good faith and for value, unless the mortgage is recorded in like manner-as grants of real property.
 

 But under section 45% of the California Vehicle Act of 1933, the provision of section 2957 of the Civil Code, in relation to recording did not apply to mortgages of motor vehicles ; and it was provided instead that no such chattel mortgage was valid until the mortgagee was registered as the legal owner in the manner provided for registration of motor vehicles. It was further provided that when a copy of the mortgage duly certified by a notary had been deposited with the department of motor vehicles, and the mortgagee had been registered as legal owner, subsequent purchasers and encumbrancers would be charged with constructive notice of the mortgage. Registration as legal owner was made complete on deposit of the copy of the mortgage with a request for registration. A filing fee of $10 was also required.
 

 With some modifications these provisions were embodied in sections 195 to 198 of the Vehicle Code of 1935, which became effective on September 15th. So far as the parties to the mortgage in question were "concerned, however, it was valid as to them under section 2973 of the Civil Code, regardless of recordation; and according to the rule laid down in
 
 Old Settlers Inv. Co.
 
 v.
 
 White,
 
 158 Cal. 236, 240 [110 Pac. 922], and reiterated in
 
 Wolpert
 
 v.
 
 Gripton,
 
 213 Cal. 474, 481 [2 Pac. (2d) 767], a mortgage, even though not recorded, is valid as against creditors of the mortgagor with actual knowledge of the mortgage. The record here does not show whether Chelhar became a creditor of Eder before or after the mortgage, but there is no evidence that
 
 *Supp. 778
 
 he had actual knowledge of it; and as is said in the Old Settlers case,
 
 supra,
 
 page 240, he would not be affected by section 2973 if his debt existed before the mortgage was executed.
 

 ■ Though a creditor at large cannot attack a mortgage which is valid between the parties, nevertheless in the absence of recordation, the law operates in favor of a creditor who acquires a lien by virtue of a levy under a writ of attachment or execution.
 
 (Ruggles
 
 v.
 
 Cannedy,
 
 127 Cal. 290, 299-301 [53 Pac. 911, 59 Pac. 827, 46 L. R. A. 371];
 
 Wolpert
 
 v.
 
 Gripton,
 
 213 Cal. 474, 480 [2 Pac. (2d) 767] ;
 
 Silverthorn
 
 v.
 
 Pacific Finance Corp.,
 
 133 Cal. App. 163, 165 [23 Pac. (2d) 798].)
 

 And in
 
 Eckhardt
 
 v.
 
 Morley,
 
 220 Cal. 229 [30 Pac. (2d) 423], it was held that to give priority to a mortgage of an automobile, it was essential that there should be full compliance with section 45% of the California Vehicle Act, even to actual payment of the registration fee.
 

 There is conflict in the decisions as to the right of priority of a judgment creditor of the mortgagor, who levies execution after the mortgagee under an unrecorded mortgage has taken possession of the mortgaged property. In Jones on Chattel Mortgages, fifth edition, section 178, it is laid down as the general rule that the delivery of possession to the mortgagee under the mortgage, before any specific lien has been acquired by others, secures priority to the mortgagee. Such was, indeed, the ruling made in
 
 Adlard
 
 v.
 
 Rodgers,
 
 105 Cal. 327, 334 [38 Pac. 889] ; but upon that point the decision was overruled in effect in
 
 Loosemore
 
 v.
 
 Baker,
 
 175 Cal. 420, 422 [166 Pac. 26]. There a levy under a writ of attachment was made on personal property in the possession of a mortgagee whose chattel mortgage had never been recorded; and the court, refusing to follow
 
 Adlard
 
 v.
 
 Rodgers, supra,
 
 held that the attaching creditor had priority to the extent of his claim. The Loosemore case is cited, and a like ruling made, in
 
 Ransom & Randolph Co.
 
 v.
 
 Moore,
 
 272 Mich. 31 [261 N. W, 128],
 

 Our Supreme Court in its holding is in accord with the rule prevailing in New York and some other states. The leading case in support of that view is
 
 Stephens
 
 v.
 
 Perrine,
 
 143 N. Y. 476 [39 N. E. 11], which deals with a situation corresponding with that here. In that case, a chattel mort
 
 *Supp. 779
 
 gage which had been made on February 25, 1892, was not filed until March 30th, at which time possession was taken by the mortgagee; and after due advertisement, a sale was had at which the mortgagee became the purchaser. Thereafter executions were levied under judgments obtained in favor of creditors of the mortgagors.
 

 In according priority to the execution creditors, notwithstanding the previous foreclosure sale, the court reached the conclusion that a mortgagee, in whose favor a lien invalid as to creditors had been created, could not validate his lien as against them by taking possession and purchasing at his own foreclosure sale. The reasoning of the court is as follows (p. 480) :
 

 “The mortgage, as to the creditors of the mortgagor, was always void. It continued to be void notwithstanding the fact that the mortgagee assumed to take possession under and to sell the property by virtue of such void instrument. As between these mortgagors and creditors, it was the same as if the mortgage did not exist, and the mortgagee could not, as against these creditors, obtain any rights under it. How could a mortgagee in a void mortgage as against creditors obtain any title to property by virtue of such mortgage? As against them the mortgagee could not rightfully take the property by virtue of this void instrument, and if she did take it in spite of the fact that the mortgage was void and no protection to her, how could she secure any further or greater right by the sale of the property and the receipt of its value? This action is against the mortgagee, and I cannot see the force of the reasoning which, while admitting that the mortgage is void as to creditors, nevertheless asserts that a title to the property covered by it may be obtained by the mortgagee by proceedings taken under it and which assert the validity of such instrument, provided they are taken before the creditors are armed with a judgment and execution so as to enforce their rights which rest upon the invalidity of the mortgage. If void, what right has the mortgagee, as against creditors, to take possession in her character of mortgagee and to sell or dispose of property described in it? Clearly she has none, and she does not acquire any by the celerity of her movements in seizing and selling property under it.
 

 
 *Supp. 780
 
 “Although in order to themselves take the property it was necessary for the creditors to have some legal process, yet, when that condition was complied with, their right to take it as between these parties became perfect.”
 

 A similar case, with like result, is presented in
 
 Wilkinson, Gaddis & Co.
 
 v.
 
 Bohlen,
 
 88 N. J. L. 680 [97 Atl. 279]. In that case a chattel mortgage, void as to creditors, was executed in favor of the defendant on November 13, 1913. On November 18th he proceeded to foreclose and at a sale held on November 24th, he became the purchaser. On the following day the plaintiff, a creditor of the mortgagor, reduced its claim to judgment, and caused execution levy to be made on the goods in defendant’s possession. Then upon refusal of the defendant to surrender possession, plaintiff caused the goods to be replevied. The trial court gave judgment in the replevin suit for the defendant; but in reversing that judgment the appellate court said (p. 682) :
 

 “In this finding and conclusion the learned trial judge erred. He gave to the sale under the foreclosure of a mortgage, absolutely void as against the appellant, the effect of a sale under a valid instrument.
 

 “Undoubtedly, the mortgagor was not in a position to successfully question the validity of the sale, because of defect in the mortgage, whereas an existing creditor, by virtue of his inchoate right, under the statute, and who had reduced his claim to judgment, issued execution thereon and had 'a levy made upon the goods covered by the chattel mortgage, was.
 

 “It needs no argument to establish that an instrument declared by law to be absolutely void as against existing creditors cannot legally be made the basis of a valid sale as against them. While it is true that an existing creditor is not in a legal position to question the validity of a chattel mortgage until he has obtained some lien on the goods covered by the void instrument, as above pointed out, it does not follow that because the goods were sold by virtue of the chattel mortgage before the existing creditor obtained his judgment and issued execution thereon against such goods that they thereby became immune to the lien created by the execution, but, on the contrary, the lien created by the execution gave the creditor a legal standing to test the
 
 *Supp. 781
 
 validity, as to Mm, of the sale of the goods under the chattel mortgage. ’ ’
 

 Since in
 
 Loosemore
 
 v.
 
 Balter,
 
 175 Cal. 420 [166 Pac. 26], our Supreme Court placed itself in accord with the New York rule to the extent of holding that possession taken by the mortgagee under an unrecorded chattel mortgage gave his asserted lien no priority over the subsequent execution lien of a creditor of the mortgagor, it follows as a corollary that the ruling of the New York court in
 
 Stephens
 
 v.
 
 Perrine, supra,
 
 should be applied here.
 

 In other words, since Beyer’s chattel mortgage of the tow-car was invalid as against Chelhar, and Beyer’s possession before sale did not enlarge or perfect his asserted lien, he could not make that possession the basis of a valid claim, or add to his title as against an execution creditor, by his own act in causing a foreclosure sale at which he became the purchaser.
 

 In addition to the failure to deposit a copy of the chattel mortgage with the department of motor vehicles, it must be borne in mind also that Beyer at no time took steps to cause himself to be registered as the legal owner of the tow-car, and that Eder at all times appeared on the records as the owner. Hence, even after the foreclosure sale, title under the statute was deemed not to have passed to Beyer and the intended transfer not to be “valid or effective for any purpose”. (Sec. 45¼, California Vehicle Act of 1933 and sec. 186, Vehicle Code, 1935.)
 

 For the reasons stated the order appealed from is reversed, and the cause remanded to the municipal court with directions to enter an order determining the plaintiff, Lorenz Chelhar, to have a valid lien, by virtue of the levy under his writ of execution, upon the tow-car in question in the amount of $550 with interest, costs and other legal charges, which shall be declared to be superior to the claims of the third-party claimant and respondent, Harry Beyer. Appellant shall recover his costs of appeal.
 

 Goodell, J., and Conlan, J., concurred.