[Civ. No. 7176.   Third Dist.   Jan. 22, 1946.]

JOSEPH ROLANDO, Appellant, v. LYLE B. EVERETT et al., Defendants; EDWARD MILLER, Intervener and Respondent.

Hill & Hill for Appellant.

E. S. Mitchell and Thelen, Marrin, Johnson & Bridges for Intervener and Respondent.

ADAMS, P. J.—On January 16, 1943, plaintiff Rolando lent $5,000 to Everett-McEachern Lumber Co., a copartnership consisting of Lyle B. Everett and J. L. McEachern. A promissory note evidencing the indebtedness was executed and delivered to plaintiff. Thereafter and on August 2, 1943, a chattel mortgage on certain described equipment belonging

to the copartnership was executed. It recited that it was "By Lyle B. Everett and J. L. McEachern, co-partners by occupation Lumbermen, mortgagors, to Rolando Lumber Company, by occupation Lumber dealers, mortgagee." It was signed "J. L. McEachern For Everett-McEachern Lumber Co. A Co-Partnership," and bore a certificate of acknowledgment which read: "On this 2nd day of August in the year of our Lord one thousand nine hundred and forty-three, before me, Lewis H. De Castle, a Notary Public . . . personally appeared J. L. McEachern known to me to be the person described in and whose name is subscribed to the within instrument and acknowledged to me that he executed the same." Said mortgage was recorded on September 1, 1943.

On January 26, 1944, plaintiff brought this action to foreclose the aforesaid chattel mortgage, only $1,000 having been paid upon the note. A keeper was placed in charge of the property mortgaged. Defendants defaulted, but Edward Miller, with permission of the court, filed a complaint in intervention seeking to quiet title to certain of the chattels which had been included in the chattel mortgage, alleging that he had become the owner of same about March 27, 1944, by virtue of an execution sale on a judgment in an action against the Everett-McEachern Lumber Co. brought by him in Mendocino County. Miller also filed an answer to plaintiff's complaint, admitting the execution of the chattel mortgage, but denying that it was made in good faith without intent to defraud creditors. Plaintiff filed an answer to the complaint in intervention denying the allegations of the same. After trial of the issues, by the court sitting without a jury, findings were made and filed in which the execution of the mortgage was recited, but it was found that it did not bear the acknowledgment required by section 1190a of the Civil Code of the State of California. It was further found that Miller had purchased at execution sale the articles claimed by him and that he, "by reason of such Execution Sale and by reason of the fact that no legal partnership acknowledgment has been had on said Chattel Mortgage, became the owner of said property so purchased under said Execution Sale." Plaintiff was given judgment for the balance due on his note, and the property included in the chattel mortgage, other than that sold to intervenor, was ordered sold to satisfy the mortgage debt.

Plaintiff has appealed from said judgment, contending first that the certificate of acknowledgment of the mortgage was sufficient.

Section 1190a of the Civil Code provides that the certificate of acknowledgment of an instrument executed by a partnership "must be substantially" in the following form:

"On this .... day of ......, in the year ...., before me (here insert the name and quality of the officer), personally appeared .........., known to me (or proved to me on the oath of ...........) to be one of the partners of the partnership that executed the within instrument, and acknowledged to me that such partnership executed the same."

It is apparent that the certificate appended to the mortgage is in the general form provided for in section 1189 of the Civil Code, which section provides:

"The certificate of acknowledgment, *unless it is otherwise in this article provided,* must be substantially in the following form:

" 'State of .........., county of .........., ss. On this .... day of ........, in the year ...., before me (here insert name and quality of the officer), personally appeared ...... ...., known to me (or proved to me on the oath of ........) to be the person whose name is subscribed to the within instrument, and acknowledged that he (she or they) executed the same.' " (Italics ours.)

■  While appellant concedes, as he must, that the certificate upon which he relies is not in the form provided in section 1190a, he contends that it is "substantially" the same and that even assuming that the certificate was defective the mortgage was recorded and such recordation was sufficient to give respondent notice. But it is obvious from the language used in section 1189, and the fact that a different form of certificate of acknowledgment by a partnership is prescribed, that it cannot be said that the one form is substantially the same as the other. Appellant cites cases in which forms of certificates of acknowledgment used were held to comply substantially with statutory requirements, and cases which hold that a certificate is to be sustained wherever it can be done by a fair and reasonable interpretation of the statute. But in none of the cases cited by him was it held that the substitution of one statutory form of certificate for another constitutes substantial compliance. It was said in *Kahriman* v. *Jones,* 203 Cal. 254, 255 [263 P. 537], that the provisions of the Civil Code relating to chattel mortgages should be strictly construed. If the use of the form prescribed in section 1189 were

to be held to be substantial compliance with the form prescribed by section 1190a, then the latter section would be rendered entirely superfluous. Also see *Wolf* v. *Fogarty*, 6 Cal. 224 [65 Am.Dec. 509]; *Kelsey* v. *Dunlap*, 7 Cal. 160, and *Malloye* v. *Coubrough*, 96 Cal. 649 [31 P. 622], in which certificates of acknowledgment were held insufficient to admit instruments to record or to operate as notice to third parties.

Appellant further argues that respondent had actual notice before he purchased at the execution sale; that as under section 2973 of the Civil Code a defective mortgage of personal property, though not made in conformity with statutory requirements, is nevertheless valid between the parties and persons who before parting with value have actual notice thereof, the mortgage was valid as to respondent; and, finally, that since he had caused a keeper to be placed in charge of the property before its seizure under the execution on Miller's judgment, he had taken the mortgaged property into his possession, and, in effect, transformed his invalid mortgage into a valid one giving him priority over Miller as an attaching creditor.

Respondent's reply to these arguments is that he did not have actual notice until the foreclosure proceeding was commenced; that the certificate of acknowledgment being defective the mortgage was not entitled to recordation (Civ. Code, § 1161) and even though recorded was ineffective as to him; and that, as he extended credit to the partnership before and subsequent to the execution and the recording of the mortgage it is, as to him, entirely void regardless of whether he had actual notice of it prior to this proceeding, citing *Old Settlers Investment Co.* v. *White*, 158 Cal. 236, 240 [110 P. 922].

The evidence amply supports the contention that the copartnership was indebted to respondent at the time the mortgage was executed and that such indebtedness was still unpaid when plaintiff began this action. It was for such indebtedness that respondent secured the judgment in Mendocino County upon which execution was issued and the sale to him was made. Whether or not he knew of the existence of the said mortgage before he purchased at the execution sale is not clear from the evidence. The pleading presents no specific issue as to whether intervenor had knowledge of the existence of the mortgage, or if he had, when he acquired such knowledge; and no finding regarding knowledge was made or requested.

In support of his contention that, regardless of notice, the chattel mortgage was invalid as to him by reason of the defective certificate of acknowledgment, respondent cites *Cardenas* v. *Miller,* 108 Cal. 250 [39 P. 783, 41 P. 472, 49 Am. St.Rep. 84]; *Bishop* v. *McKillican,* 124 Cal. 321 [57 P. 76, 71 Am.St.Rep. 68]; *Noyes* v. *Bank of Italy,* 206 Cal. 266 [274 P. 68], and *Bank of America* v. *Sampsell,* 114 F.2d 211. In the Cardenas case (1895) a chattel mortgage upon a growing crop of barley was executed March 11, 1892, by one Drennan in favor of Cardenas. It was not recorded until June 28, 1892. At the time of its execution Drennan was indebted to Miller on a promissory note. Miller sued thereon and caused an attachment to be levied upon Drennan's interest in the crop on June 23, 1892 (prior to the recordation) and a keeper was placed in charge of the crop by the sheriff. At that time Miller had actual notice of the mortgage, though it was not yet recorded. Plaintiff Cardenas, claiming the right so to do under his mortgage, harvested and sacked the barley. Miller thereafter took possession of it. The question was, did the lien of the attachment have priority over that of the mortgagee when the lien claimant had actual notice of the mortgage. The court said that section 2957 of the Civil Code makes a clear distinction between creditors and subsequent mortgagees—that as to creditors the unrecorded mortgage was void without qualification, and as to them the question of actual notice was wholly immtaerial; and that, since the attachment antedated the recordation of the mortgage, the mortgagee was not protected as against the attaching creditor. No defect in the mortgage was there relied upon, but since in the case before us the certificate of acknowledgment was so defective that the mortgage was not entitled to recordation (Civ. Code, § 1161), the situations in the two cases are the same.

In *Bishop* v. *McKillican* (1899), *supra,* a mortgage covering both real and personal property was recorded as a real estate mortgage; but it contained no affidavit and was not recorded as a chattel mortgage as required by the Civil Code. A creditor of the mortgagor afterwards brought suit against said mortgagor and caused an attachment to issue under which the sheriff (McKillican) seized some of the personal property included in the mortgage. In an action to foreclose the mortgage Bishop was named receiver for the mortgagor with authority to continue its business. In an action to tèst the sheriff's right of possession the court held that under section

2957 of the Civil Code the mortgage was void as to the attaching creditor as far as the personal property was concerned; and judgment for the sheriff was affirmed.

In *Noyes* v. *Bank of Italy* (1929), *supra*, defendant bank, in 1921 and 1922, lent one Petrich a large sum of money, of which about $8,000 remained unpaid on March 23, 1923. On that date Petrich gave the bank a promissory note for the unpaid balance and a chattel mortgage covering personal property. The mortgage was filed for record on March 26, 1923, but was defective in that it lacked a certificate of acknowledgment. On July 28, 1923, the bank, assuming to act under the terms of the mortgage, took possession of the property and caused same to be sold as pledged property on August 28, 1923, at which time it bought it for $3,000, there being no other substantial bids. On August 10, 1923, an involuntary petition in bankruptcy had been filed against Petrich. He was adjudged a bankrupt on October 22d, and plaintiff Noyes was appointed trustee of his estate. Noyes thereupon demanded of the bank possession of the personal property in question, and being refused, brought this action. At the trial admission of the mortgage in evidence was refused, and the question before the Supreme Court was the validity of this ruling in view of section 2957 of the Civil Code, the respondent claiming that the mortgage was void as to creditors. The court sustained this contention, saying, pp. 268-269:

"We think the position of the plaintiff is well taken. Section 2957 of the Civil Code provides: 'A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless: . . . 2. It is acknowledged or proved, certified and recorded in like maner as grants of real property.' It is a conceded fact in this case that said chattel mortgage was not acknowledged as required by the code section and was void to the extent therein provided. As applied to the facts in the present case, the said mortgage under the plain intent of the statute was 'void as against creditors of the mortgagor,' Petrich, and must be so declared unless some one of the considerations urged by the defendant would require a contrary conclusion."

However, in that case it was insisted by appellant that none of the creditors of Petrich was in a position to attack the mortgage, it not being shown that any of them were creditors

who had acquired a lien upon the mortgaged property by virtue of some legal proceeding or who had come armed with some process authorizing seizure of the property; and that a mere creditor at large could not attack the mortgage. The court said at pages 269-270:

". . . It is urged that the case of *Loosemore* v. *Baker*, 175 Cal. 420 [166 P. 26], citing *Ruggles* v. *Cannedy*, 127 Cal. 290 [46 L.R.A. 371, 53 P. 911, 59 P. 827], is directly in point and is controlling here. We think a sufficient answer to the contention lies in the fact that whatever the status of the creditors may be in this case, the Bankruptcy Act has supplied the deficiency which the defendant claims to have existed and has vested the trustee in bankruptcy with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied.

.  .  .

"Even if it be assumed that a mortgage void as to creditors pursuant to the plain terms of the statute could be transformed into a valid mortgage by the mortgagee seizing the mortgaged property or by otherwise taking possession of the same with the consent of the mortgagor and thus shut out general creditors or creditors not possessing a lien or armed with process, yet we are satisfied that it was the intention of the Bankruptcy Act to safeguard the rights of such general creditors by giving the trustee the status of a lien creditor and also to prevent the mortgagee from defeating the rights of the creditors of the bankrupt by contending that such creditors were general creditors only. . . . In other words, the trustee was intended to be placed in the position of a lien creditor who would, but for the bankruptcy proceeding, be entitled to attack the alleged void mortgage and to enable him to protect the interests of general creditors against invalid liens, unlawful transfers, etc."

In *Bank of America* v. *Sampsell* (1940), *supra,* the bank made a loan taking as security a chattel mortgage on 11 automobiles. The mortgage was not filed with the Department of Motor Vehicles and the mortgagee registered as owner of the cars, as required by section 195 of the Vehicle Code, until January 26, 1939, on which date the bank obtained possession of and sold 10 of the automobiles. On February 1, 1939, the mortgagor was adjudicated a bankrupt and thereafter Sampsell, trustee in bankruptcy, secured an order for the bank to show cause why the mortgage should not be declared invalid.

After a hearing an order issued adjudging the mortgage to be void and authorizing the trustee to sell the cars free of any lien. The question on appeal was whether the failure to comply with section 195 of the Vehicle Code rendered the mortgage invalid as against the trustee as the representative of creditors who became such prior to compliance with the section. The court held that it did, saying that "in California, a creditor may attack his debtor's mortgage even though he is unable to perfect a lien until after the mortgage has been recorded *or the mortgaged property has passed into the hands of the mortgagee*," citing *Ruggles* v. *Cannedy*, 127 Cal. 290 [53 P. 911, 59 P. 827, 46 L.R.A. 371], *Noyes* v. *Bank of Italy, supra, Chelhar* v. *Acme Garage,* 18 Cal.App.2d Supp. 775 [61 P.2d 1232].

In support of his contention that since he had caused a keeper to be placed in charge of the mortgaged property prior to its seizure and sale under Miller's execution he had obtained priority over Miller, appellant relies upon *Adlard* v. *Rodgers,* 105 Cal. 327 [38 P. 889]. In that case a mortgage, though recorded, was not acknowledged, proved or certified as required by section 2957 of the Civil Code, and the court said it was void as against attaching creditors "unless plaintiff [assignee of the mortgagee] had reduced the property to possession." The evidence showed that plaintiff had been given possession of the key to the premises where the property was stored, had locked the door and posted thereon a notice that he was in possesion of the property therein contained. The following day, defendant, as constable, attached the property in an action by a creditor of the mortgagor. The court said, page 334, that, "Plaintiff's mortgage was valid as between himself and the mortgagors. It provided for possession by the former upon nonpayment. Default was made and he took possession. As against attaching creditors such possession was valid."

Respondent, however, contends that the Adlard case is overruled by *Ruggles* v. *Cannedy, supra,* and *Loosemore* v. *Baker, supra.* In the former case apparently no mention was made of *Adlard* v. *Rodgers* by either court or counsel. However, in *Loosemore* v. *Baker* the mortgagee of personal property was in possession thereof with the consent of the owner under a chattel mortgage which was never recorded. The mortgagor became indebted to another party subsequent to the giving of the mortgage, and after the mortgagee had taken pos-

session this creditor attached the chattels in the possession of the mortgagee. The court said, page 422:

"The judgment giving priority to the lien of the attachment under these facts comes strictly within the decisions of this court in *Ruggles* v. *Cannedy,* 127 Cal. 291 [46 L.R.A. 371, 53 P. 911, 59 P. 827], and *Alferitz* v. *Scott,* 130 Cal. 474, [62 P. 735]. If it is thought that anything to the contrary to these decisions is held in *Adlard* v. *Rodgers,* 105 Cal. 327 [38 P. 889], it must be considered as superseded by the later decision of the court In Bank above cited. *Lemon* v. *Wolff,* 121 Cal. 272 [53 P. 801], also relied on by appellant, contains nothing bearing upon this case. It declares the sound and familiar principle that even a chattel mortgage void for lack of recordation or void for defective verification and acknowledgment may still be good between the parties, and that a mere creditor at large is not in a position to attack it, it being said that 'Only a creditor who has acquired a lien upon the mortgaged property by virtue of some legal proceeding, or who is armed with some process authorizing seizure of the property, can question the compliance with these formalities.' In this case the creditor had acquired a lien and was armed with process."

In *Chelhar* v. *Acme Garage, supra,* Beyer, the mortgagee of an automobile, had taken possession of same under a chattel mortgage that had not been deposited with the Motor Vehicle Department as prescribed by the Vehicle Code. Chelhar obtained a judgment against the mortgagor and caused an execution to issue, and the car was seized from the mortgagee. The latter filed a third party claim, and after a hearing the trial court held title to be in the said mortgagee. On appeal to the appellate department of the superior court this order was reversed. In the opinion written by the very able Judge Walter Perry Johnson, he said that there was conflict in the decisions as to the right of priority of a judgment creditor of a mortgagor who levies execution after the mortgagee under an unrecorded mortgage has taken possession of the mortgaged property; that while it had been held in *Adlard* v. *Rodgers* that in such case the mortgagee in possession had priority, that that case had been overruled in effect by *Loosemore* v. *Baker, supra.* He cited *Ransom & Randolph Co.* v. *Moore,* 272 Mich. 31 [261 N.W. 128], in which the Loosemore case was followed; also *Stephens* v. *Perrine,* 143 N.Y. 476 [39 N.E. 11], and *Wilkinson, Gaddis & Co.* v.

*Bohlen,* 88 N.J.L. 680 [97 A. 279]; and the conclusion was that the chattel mortgage was invalid as against the creditor, and that Beyer's possession before sale did not enlarge or perfect his asserted lien or add to his title as against an execution creditor. Also see *In re Steffens,* 31 F.2d 660, 662 (citing *Stephens* v. *Perrine, supra*); *Timmer* v. *Talbot,* 19 F. Supp. 687, 689 (affirmed in 89 F.2d 1011]; *In re Shay's Estate,* 157 Misc. 615 [285 N.Y.S. 379, 381], and *Collateral Finance Co.* v. *Braud,* 298 Ill.App. 130 [18 N.E.2d 392, 395-396], citing *Ruggles* v. *Cannedy* and *Chelhar* v. *Acme Garage, supra.*

In view of the foregoing decisions the judgment of the trial court should be and it is hereby affirmed.

Peek, J., and Thompson, J., concurred.