Markowitz, J.
Defendants, British Commonwealth Pacific Airlines, Ltd. (hereinafter called BCPA) and British Commonwealth Pacific Airlines, Ltd., now allegedly doing business as Quantas Empire Aviation, Ltd. (hereinafter called Quantas). appear specially herein for the purposes of this motion, whereby they request an order vacating and setting aside the service of *262 the summons in this action upon them. The defendants United Air Lines, Inc. and British Overseas Airways Corp. have appeared generally in this action.
The grounds asserted by BCPA and Quantas are:
(1) That service was not made upon a proper representative of BCPA and Quantas, both being foreign corporations;
(2) That this court does not have jurisdiction of BCPA and Quantas since, as defendants allege, both are foreign corporations not doing business within the State of New York at the time of the attempted service of the summons, or at the time of the transactions giving rise to any alleged cause of action.
Plaintiffs urge that assuming, arguendo, BCPA and Quantas are foreign corporations not doing business in this State, the jurisdiction of this court has been properly invoked by virtue of the consent of BCPA and Quantas to be sued herein, as provided by the contract of carriage (which includes the Warsaw Convention rules [49 U. S. Stat. 3000] here applicable) thereby waiving the service of process requirements under section 229 of the Civil Practice Act.
While no complaint has been served with the summons sought to be vacated, it is undisputed that plaintiffs’ proposed cause of action is for damages for wrongful death predicated upon an airplane accident in which plaintiffs’ intestate, William Kapell, was fatally injured. On May 7,1953, he had purchased, in New York City, at the office of the defendant British Overseas Airways Corp. (hereinafter called BOAC), a round-trip ticket from New York to Sydney, Australia, by way of San Francisco, California. In the sale of this ticket BOAC was acting as general sales agent for BCPA.
Kapell, without incident, made the flight from New York to San Francisco to Sydney, Australia., The trip from New York to San Francisco was on an airplane owned and operated by the defendant United Air Lines, Inc., a domestic carrier. The return flight from San Francisco to New York was to he made on a plane of the same carrier. However, on the return leg of the flight from Sydney, Australia, to San Francisco, which was on a plane owned and operated by BCPA, the plaintiffs’ intestate was killed on October 29,1953, when the plane crashed in California. BCPA on the date of the crash was an Australian corporation. It has since discontinued flight operations and is now in liquidation. This, however, has no effect upon the consideration of the instant motion. Under date of May 15, 1954, the Civil Aeronautics Board of the United States licensed Quantas, which had purchased a substantial part of the airplane *263 equipment of BCPA, to take over the run formerly operated by BCPA. Quantas, like BCPA, is incorporated under the laws of Australia, and all of its stock is held by the Commonwealth of Australia.
The ticket bought and issued to plaintiffs’ intestate in New York contained an explicit reference to what is popularly known as the Warsaw Convention. The following appeared on the face of the ticket: “ Carriage hereunder is subject to the rules related to liability established by the Convention for the Unification of Certain Rules relating to International Carriage by Air signed at Warsaw, October 12, 1929 unless such carriage is not ‘ International Carriage ’ as defined by said Convention.”
Australia and the United States are both signatory parties to the Warsaw Convention. This convention was entered into in order to accomplish the unification of certain rules relating to international transportation by air, and was signed on October 12, 1929, by the representatives of twenty-three countries at Warsaw, Poland. Adherence to the convention was advised by the United States Senate on June 15, 1934, and proclaimed by the President of the United States on October 29,1934 (49 U. S. Stat. 3000 et seq.; Komlos v. Compagnie Nationale Air France, 111 F. Supp. 393, 397). The convention, as a treaty, constitutes part of the law of this land, overriding State law and policies (U. S. Const., art. VI, § 2; Wyman v. Pan American Airways, 181 Misc. 963, affd. 267 App. Div. 947, motion for leave to appeal to the Court of Appeals denied 267 App. Div. 983, affd. 293 N. Y. 878, certiorari denied 324 U. S. 882; Komlos v. Compagnie Nationale Air France, supra).
Since the flight was subject to the Warsaw Convention rules, the rights of the parties were fixed by those rules therein provided. Said rules were made a condition of the ticket purchased by the deceased and in any event were so made under the rules themselves (Warsaw Convention, art. 3, subd. 2; Wyman v. Pan American Airways, 181 Misc. 963, 965, supra).
We are therefore brought to a consideration of the question of the effect of article 28 of the Warsaw Convention on the diverse contentions of the parties to the instant motion. Article 28 provides: “ (1) An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination. (2) Questions of procedure shall be governed by. the law of the court to which the case is submitted.”
*264 The ticket purchased by the passenger was for a round-trip passage from New York to San Francisco, to Sydney, to San Francisco, to New York. There were thus several intermediate breaks in travel en route with the final destination at New York. Such final destination, it is obvious, falls clearly within the phrase, “ place of destination ” of subdivision (1) in article 28 of the Warsaw Convention(Wyman v. Pan American Ainvays, supra; see 20 N. Y. State Bar Assn. Bulletin, p. 193).
Furthermore, on the basis of the entire record before me and the conceded facts pursuant to stipulation between the attorneys for the parties, it is also clear that New York is a proper forum under article 28 of the said convention for the purposes of commencing suit, since New York was a place of business through which the contract of carriage was made by BCPA. The attorneys for the defendants BCPA and Quantas and the attorneys for the plaintiff have stipulated for the purposes of this motion that in October of 1953 BOAC and BCPA had a joint listing in the Manhattan Classified Telephone Directory which reads as follows: “ British Commonwealth Pacific Airlines British Overseas Airways Corp. Passenger Reservation Ticket Office and Air Cargo Information, 342 Madison Av. — Murray Hill 7-8900 ”.
In addition thereto, both BOAC and BCPA had separate listings in the 1953 alphabetical Manhattan telephone directory indicating their respective offices to be at 342 Madison Avenue and their respective telephone numbers to be Murray Hill 7-8900. Furthermore, the moving defendants concede that on the left of the entrance door to the office at 342 Madison Avenue there was a plaque on the wall on which BOAC was listed as representing, among other foreign airlines, BCPA and QUA (which is the designation of Quantas Empire Aviation, Ltd.).
Plaintiffs contend that since article 28, with relation to the flight here involved, was part of the contract of carriage, it constituted an acceptance by the foreign carrier of jurisdiction over it in any of the forums in which, under the provisions of article 28, the passenger or his executors might elect to sue, these including New York as the place of destination and as the place of business through which the contract was made. Defendants, on the other hand, assert that article 28 merely delineates and circumscribes forums in which venue of an action for damages may be laid, that it does not confer in personam jurisdiction in the State of New York over a foreign corporation in the absence of proper service under section 229 of the Civil Practice Act or a judicial determination that the foreign corporation *265 which has been served is actually conducting such business in New York as to incur liability to service. Defendants’ argument in this respect is tenuous and takes an exceedingly narrow mew of the provision in article 28, which, in my opinion, does more than merely indicate the venue in which an action must be brought. I read and construe the article as bringing to airline passengers on flights subject to the rules of the Warsaw Convention an assurance that the carrier has consented to be sued in those forums specifically enumerated and set forth in article 28 and that the passenger may rely on this consent in booking his passage. Such interpretation is patently consistent with the primary purposes of the Warsaw Convention, namely, to stabilize the rules and regulations pertaining to international air travel and thus enable both carrier and passenger to know in general their rights and obligations in the event of aircraft accident. Only by enactment of these rules was it possible to encourage carriers to engage in international air travel which was, at the time of enactment of the Warsaw Convention rules (1929), a fledgling industry. The carriers were therefore given an unusual incentive to encourage them in their undertaking as transcontinental carriers. For example, they were favored with a limitation of liability to a nominal sum, for a passenger’s injury or death, except where such injury or death was due to willful misconduct on its part, without assuming concomitant responsibility. This, of course, was a serious imposition on the rights of passengers and a decided deprivation of the amount of recovery to which they might ordinarily be entitled. We see therefore that balances were sought to be struck between passengers and carriers so that the opportunity of carriers to progress in the field might be encouraged and aided. To that view, while the carriers gained a decidedly advantageous limitation of liability, article 28 on the other hand provided for jurisdiction over them in the places specified and further that questions of procedure shall be governed by the law of the court to which the case is submitted. Certainly, such consent to be sued in the forums specified in article 28 at plaintiffs’ option, did not place an undue hardship upon the carriers. Thus, view the following quotation is decidedly apt: ‘‘ The Convention obviously intended to integrate the rights and liabilities of the passengers and carrier in connection with ‘ international transportation ’ as defined in the Convention, and ‘ unify rules relating to international transportation by air ’. Garcia v. Pan American Airways, supra, 269 App. Div. at page 292, 55 N. Y. S. 2d at page 322. If the carrier, in addition to the liability provided for in the Con *266 vention could also be subjected to such other liabilities as might exist under the laws of such state as might be selected for instituting suit, the very purpose of the Convention as expressed therein, namely, to regulate ‘ in a uniform manner the conditions of international transportation by air in respect of the * * * liability of the carrier ’ would be defeated ” (Salomon v. Konin-klijke Luchtvaart Maatschappij, 107 N. Y. S. 2d 768, 773-774).
Therefore, since the rights of the parties are fixed by the rules of the Warsaw Convention, an interpretation of article 28 as constituting consent by the foreign carrier to be sued in this jurisdiction does no violence, in my opinion, to either the purpose of the convention rules or the explicit language of the said article. Subdivision (2) of article 28 provides that questions of procedure shall be governed by the law of the court to which the case is submitted. The word ‘ ‘ submitted ’ ’ when used with reference to judicial controversy implies consent to the jurisdiction of the court. That the Warsaw Convention purports to adopt rules of jurisdiction rather than mere venue may be gleaned from article 32 of chapter 5, which reads as follows: ‘‘ Any clause contained in the contract and all special agreements entered into before the damage occurred by which the parties purport to infringe the rules laid down by this convention, whether by deciding the law to be applied, or by altering the rules as to jurisdiction, shall be null and void.”
It is generally well established that foreign corporations not doing business in New York may consent to be sued herein and thereby confer personal jurisdiction on our courts even though the cause of action may have arisen outside the State (Restatement, Conflict of Laws, § 90). This situation frequently has arisen in cases involving agreements to arbitrate. The principles therein stated, I am of the ultimate conviction, are applicable here (see Gilbert v. Burnstine, 255 N. Y. 348; Prosperity Co. v. American Laundry Mach. Co., 271 App. Div. 622, affd. 297 N. Y. 486; Matter of Heyman, Inc., v. Cole Co., 242 App. Div. 362; Matter of Galban Lobo Co. [Haytian Amer. Sugar Co.], 271 App. Div. 310, and Matter of Liberty Country Wear [Riordan Fabrics Co.], 197 Misc. 581, 585). In the Gilbert case (supra) the court stated, at page 354: ‘‘ They contracted that the machinery by which their arbitration might proceed would be foreign machinery operating from the foreign court. No other fair conclusion can be drawn from their language. * * * Contracts * * * should * * * be enforced. * * * Courts should endeavor to keep the law at a grade at least as high as the standards of ordinary ethics.” In referring to the Gilbert case in the American Law Institute’s *267 New York Annotations to the Restatement of Conflict of Laws, it is said under section 81: “ In the leading case of Gilbert v. Burnstine * * * .the defense that the English tribunal did not have jurisdiction of the defendant was overruled for the reason that consent grounds jurisdiction. * * * the basis of the decision appears applicable to contracts of any kind in which there is consent to the jurisdiction of a court. ’’
In the Prosperity case (271 App. Div. 622, supra) the Appellate Division held that jurisdiction over a foreign corporation not doing business in the forum may be acquired by the advance consent of the corporation without the requirement of service of process on the corporation in accordance with the usual rules respecting service. The basic question there presented was whether the Ohio court had jurisdiction of the party who at no time was within the physical jurisdiction of the Ohio courts, was not doing business in that State and no provision of the law of that State gave extraterritorial validity to the process issued by its courts. Upholding the jurisdiction, the court stated the following (pp. 627-628, which is applicable here): “ Consent to the jurisdiction of the courts of a foreign State or land may be derived from the consent of the parties in agreement and may be given to such jurisdiction at the time of the execution of the agreement by the terms of the agreement and prior to the arising of any issue brought about by breach of the agreement. (Gilbert v. Burnstine, 255 N. Y. 348; Pohlers v. Exeter Manufacturing Co., 293 N. Y. 274; Wilson v. Seligman, 144 U. S. 41.) * * * Here are two parties, each with a different State domicile, each foreseeing that at some time there could be the necessity for arbitration. * * * In the matter before us, American Company selected the State of Ohio within the boundaries of which arbitration was to be held. Now comes Prosperity Company (plaintiff-respondent here) and says, in effect, that it cannot be brought within the State of Ohio except by the service of judicial process issued by the courts of Ohio, and yet at the time of the making of the contract Prosperity Company must have known that no judicial process of any effect could issue from the Ohio courts as against Prosperity Company. Does Prosperity Company imply that it intended to enter into an unenforcible contract? This cannot be so. It must be concluded that Prosperity Company, at the time of making the agreement, by such agreement, gave consent to being amenable, for the purposes of the agreement, to the jurisdiction of the State of Ohio and the courts of the State of Ohio when necessary to carry out the agreement.”
*268 It is in this doctrine of consent that the solution of the problem of jurisdiction has been found and applied in arbitration proceedings. This doctrine goes to the very heart of arbitration, for, without it, the agreement itself to arbitrate is rendered null and void by a later objection to jurisdiction and the interposition of legal technicalities over service of process. Thus, we now have the liberal interpretation propounded in such arbitration cases that the constitutional privilege of a nonresident to remain immune from process may be waived no less before than after the commencement of proceedings so that a nonresident party may, in advance of any litigation, consent that a State exercise jurisdiction over him.
In the light of my determination construing article 28 of the Warsaw Convention as part of the contract of carriage, by which the parties thereto consented to confer jurisdiction on New York as a forum available to the deceased passenger, service of process was waived and was unnecessary for jurisdictional purposes, provided adequate and sufficient notice of the commencement of the action was given the defendant. Such a notification was in fact promptly received by BCPA. Furthermore, I find that under the circumstances herein presented, the notice to BOAC through its employee, Ball, as sales agent for BCPA, constitutes adequate and sufficient notice to BCPA.
It is undisputed that the summons herein was served upon one Peter Ball, assistant to the manager of the defendant, BOAC. Although it appears that Ball was neither an officer nor employee of BCPA or Quantas, he was, however, authorized to accept service of process on behalf of BOAC, and said company, a codefendant in this action, has appeared herein generally following such service. BOAC has not moved herein to vacate service of the process. BOAC, by agreement dated September 28, 1948, had been appointed general sales agent for BCPA. Under the general sales agency schedule, attached to the general agency agreement, BOAC contracted to ‘‘ at all times diligently and faithfully transact the business of the airline (B.C.P.A.) at all offices in the area.” As part, undoubtedly, of its contractual obligations under this agreement, BOAC, through Ball as its employee, immediately turned over to counsel for BCPA, who is also general counsel for BOAC, the summons that had been served upon Ball as the alleged representative of BCPA and Quantas. Said counsel promptly interposed a special appearance on behalf of the defendants BCPA and Quantas and moved to vacate the service. It is apparent from this chronology that BCPA and Quantas received prompt notification of the pendency of this action. As *269 stated, it is my conviction that under the circumstances herein such notification to BOAC was sufficient and adequate notice to BCPA. The situation is not naturally different from that found in the Prosperity case (271 App. Div. 622, affd. 297 N. Y. 486, supra) hereinbefore discussed. There, the notice of the arbitration proceeding had been mailed to the plaintiff. Objection was raised regarding the lack of personal service. The court held that consent to the arbitration obviated the necessity of personal service and refused to set aside the arbitration award. The court pointed out that the agreement to arbitrate would be a virtual nullity if personal service were to be required when the plaintiff at the time it entered into the arbitration agreement knew that it was a foreign corporation not doing business in Ohio and with no person there present upon whom service of process could be made under the Ohio statute. The rationale of the court’s decision in the Prosperity Co. case (supra) is fully applicable here. BCPA may not urge the absence of personal service as a ground for vacating the summons herein where it has been shown it received prompt notification of the pendency of the action in this forum and that there were contractual conditions by which it consented to jurisdiction in this forum.
In respect of Quantas, the same reasoning and conclusion apply. While Quantas was not a party to the contract of flight carriage upon which the jurisdiction of this court is invoked, nonetheless, for the purpose of this motion, sufficient appears, from its purchase of a substantial part of the assets of BCPA and the obtainment of a franchise to fly the routes surrendered by BCPA upon termination of their flight operations, to hold Quantas responsible as a successor in interest to BCPA. On the face of the facts disclosed it is arguable that Quantas took subject to whatever infirmities or responsibilities existed at the time they purchased or acquired assets from BCPA. A question of fact is presented which can only be resolved upon a trial after issue is joined on whatever defenses Quantas may be advised to interpose.
While I am of the decided opinion that jurisdiction was conferred over these moving defendants, upon the grounds heretofore stated, sufficient in itself to dispose of the motion herein, a more complete determination of all the issues posed, independently of the finding of jurisdictional consent, requires consideration of movants’ contention that for jurisdictional purposes the conditions of service of process under section 229 of the Civil Practice Act are lacking.
*270 The branch of the motion which contends that service on Ball as an employee of BOAC was jurisdictionally defective, since both movants are foreign corporations not doing business in this State, requires a consideration of the relationships existing between BOAC and the moving defendants and their respective duties and responsibilities in connection with the conduct of their businesses in New York.
There is no precise formula by which to measure the nature or extent of local business activities which render foreign corporations amenable to process in this State. Each case must be determined on its own particular facts (Tauza v. Susquehanna Coal Co., 220 N. Y. 259; Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., 299 N. Y. 208; Society Milion Athena v. National Bank of Greece, 166 Misc. 190, 197, affd. 254 App. Div. 728; Stark v. Howe Sound Co., 141 Misc. 148, affd. 234 App. Div. 904).
The proper and reasonable rule to be applied is set forth in the landmark case of International Shoe Co. v. Washington (326 U. S. 310): that jurisdiction exists where the foreign corporation has such contacts within the State of the forum as make it reasonable and just and inoffensive to traditional notions of fair play to require the corporation to defend the particular suit which is brought. In this connection the balancing of conveniences, conflicting burdens, if any, and interests of the parties are relevant considerations (Bomze v. Nardis Sportswear, 165 F. 2d 33; Fikaris v. Atlantic Oil Carriers, 138 N. Y. S. 2d 896). The criteria applied should be neither mechanical nor quantitative but simply that a foreign corporation should be held to the obligation of responding to an action to the extent that it has exercised the “ privilege of conducting activities within a state ”. (International Shoe Co. v. Washington, supra, p. 319.) Continuity of action and a systematic transaction of business from a permanent locale by a representative is essential. The foreign corporation must be here, not intermittently or spasmodically, but with a fair measure of permanence. (International Shoe Co. v. Washington, supra, Tauza v. Susquehanna Coal Co., 220 N. Y. 259, supra, Sterling Novelty Corp. v. Frank S Hirsch Distr. Co., supra.) Such activities exercised in this forum must be an essential and integral part of its business but need not be the characteristic feature of the business nor the principal part of its business. (Pomeroy v. Hocking Valley Ry. Co., 218 N. Y. 530; Stark v. Howe Sound Co., supra.)
The circumstance that the foreign corporate defendant is represented in its local activities by a separate individual or by a separate corporation and not by a directly controlled subsidi *271 ary or branch office is not in itself determinative.” (Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., 299 N. Y. 208, 211, supra; see, also, Fikaris v. Atlantic Oil Carriers, supra.) Nor is the circumstance that the representative worked for several principals of special importance (Bomze v. Nardis Sportswear, supra).
Independently of the question hereinbefore determined of jurisdictional consent under the terms of the Warsaw Convention, I am of the opinion that testing the papers before me by these criteria there is ample support for my conclusion that BCPA for jurisdictional purposes was “ present ” and doing business in New York.
In this regard a review of the facts shows that at the time of the service of the summons on Ball he was an assistant manager in the employ of BOAC which had been designated by BCPA as the latter’s New York representative in connection with its transpacific flights to and from San Francisco and points in Australia and New Zealand.
Examination of the general sales agency contract between BOAC and BCPA reveals that BOAC performed in this State an integral part of BCPA’s activities and functions which consisted of something more in degree than a mere solicitation of transpacific flight passage. The “ Schedule of G-eneral Provisions ” of said general sales agency contract specifically enumerated such duties and responsibilities, on the part of BOAC in behalf of BCPA, in addition to those hereinbefore described, so as to reasonably conclude that BCPA is doing business here. The obligations and duties include, among others, “ the reasonable cost of office accommodations so arranged and of any other expenses specifically incurred in connection therewith shall be recharged to the Airline ’’; full liaison with BCPA staff members and arrangements for their accommodations; indemnification of BOAC by BCPA against all actions, claims, proceedings, costs, losses, damages, charges and defenses which BOAC may sustain, incur or pay by reason of any service rendered by BOAC.
In addition, BOAC, as the agent for BCPA, was required under the terms of the sales agency agreement, to adequately publicize the business and arrange for telephone listings, and to use reasonable efforts to obtain traffic in New York for BCPA; to operate an engineering, reservation, passage and booking office for BCPA; to sell and issue tickets and to collect fares and charges for passengers, baggage and cargo, to advise passengers as to passport, health, currency, immigration and other regulations of foreign countries to and through which the planes of BCPA *272 would travel; to recommend duly appointed BOAC booking agents to BCPA for appointment by BCPA as passenger and air cargo booking agents, and to supervise and control such agents so appointed, with the rights reserved to BCPA to direct the sales approach and publicity of such booking agents and the right to BCPA to an accounting from BOAC of amounts received by BOAC for sales made by the appointed booking agents. The sales agency agreement further expressly provided that BOAC was entrusted with the responsibility to “ at all times diligently and faithfully transact the business of the Airline (BCPA) at all offices in the area ”. The stipulation between the attorneys for the parties relative, among other matters, to the telephone listings of BOAC and BCPA, hereinbefore mentioned, is particularly pertinent in this regard.
On the basis of these factors the activities of BOAC within this forum on behalf of BCPA are sufficient to satisfy me that BCPA was present here so as to bring it within the application of subdivision 3 of section 229 of the Civil Practice Act. BOAC as sales agent for BCPA does more than sell tickets. It performs all the essential activities necessary for the enhancement of the business of BCPA in the New York area. It works toward developing a New York market for oversea flights for BCPA. It promotes good will and business generally with customers coming to the New York area. From a realistic viewpoint the lifeblood of BCPA air business toward developing the New York, area as a profitable market depends primarily upon the activities of its sales representative here. This is not a situation wherein BCPA comes but occasionally or casually into New York but rather involves an established locale by which integral phases of its over-all business operations are being regularly, consistently and systematically carried on in connection with its intercontinental air flights. It is subject by its contract with BCPA, to complete supervision by BCPA. It is truly an agent of BCPA.
That BCPA neither held a license nor conducted flying operations over New York, nor held assets in New York, nor had a corporation with any officers or directors or a branch office in New York, nor ever sought permission to do business in New York or to designate any person upon whom service might be made in this State in and of themselves are not determinative of the issue herein. As long as the BOAC was acting as an agent of BCPA in New York under the facts and situation as hereinbefore described, the absence of the above-mentioned circumstances will not deprive our courts of jurisdiction (Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., 299 N. Y. 208, supra).
*273 Therefore, the activities which make BCPA “ present ” here for jurisdictional purposes, constitute BOAC the ‘‘ managing agent ” of BCPA within the meaning of the provisions of subdivision 3 of section 229 of the Civil Practice Act. (Stender v. Blodgett Co., 308 N. Y. 752; Benware v. Acme Chem. Co., 284 App. Div. 760; McCaskell Fitters v. Goslin-Birmingham Mfg. Co., 81 N. Y. S. 2d 309, affd. 274 App. Div. 761; Goodman v. Pam American World Airways, 1 Misc 2d 959.)
"While the principles stated in the line of decisional law cited by the moving defendants are impressively set forth, their application must be more flexible in a field so fluid as that with which we are now dealing. To adhere to a narrow holding, under the facts herein stated, that BOAC is merely an agent solely for the purposes of soliciting and selling passage but not present for jurisdictional purposes diverts the inquiry to abstract considerations without regard to the realities of our dynamic aeronautical age and the resulting relationships thereby established. It has been said, and it is appropriately applicable here, that “ some of the greatest errors in thinking have arisen from the mechanical, unreflective, application of old formulations — forgetful of a tacit ‘ as if ’ — to new situations which are sufficiently discrepant from the old so that the emphasis on the likenesses is misleading and the neglect of the differences leads to unfortunate or foolish consequences ”. (United Shipyards v. Hoey, 131 F. 2d, 525, 526-527.)
The development of international air transportation has become amazingly revolutionized, particularly during the past 10 years, and we have yet but scratched the surface in the advances being made. The shrinkage of the globe by air travel and the fast-changing pace of air growth must be accompanied by changing adjustments of the established rights between carriers and passengers. The new air-age advances have led to the acceptance by the general public of accustomed routines of airplane travel. Therefore, upon reflection, the moving defendants herein, being free to conduct an integral part of their entire scheme of business activities here by the solicitation of passenger and cargo business of the citizens of our State, should be required to give reasonable guaranties to such persons, and those guaranties must be readily and clearly available. This, I am convinced, was also the intent of article 28 of the Warsaw Convention.
It is neither unreasonable nor unjust, in view of the present advanced technological development and substantial world-wide commercial relationships now existing in the aviation industry, to have the industry assume the obligation of defending suits in *274 this forum under the circumstances herein. To decide otherwise would cast an undue burden on a solicited resident of our State whose alternative available forum may be at an unreasonable and inconvenient distance. (Fikaris v. Atlantic Oil Carriers, 138 N. Y. S. 2d 896, supra.)
It is, therefore, my conclusion that the public policy and the law require today a more broadened approach to this issue of jurisdiction of our New York courts over foreign corporate air carriers regularly engaged in this State in the conduct of their business as herein shown. This approach is a more realistic one. It is self-evident that New York City is one of the most important air centers of the world. As a matter of policy, foreign corporations, such as BCPA and Quantas, doing business here through agencies or subsidiaries, should be readily amenable to the process of our courts, and, as a general proposition, where an agency such as BOAC is here shown to be acting as the general agent for BCPA, a foreign corporation, BOAC should be held to occupy the status of a managing agent of BCPA within the meaning of the statutory provisions of our Civil Practice Act authorizing service of process upon a managing agent of a corporation (see Goodman v. Pan American World Airways, 1 Misc 2d 959, supra). Whatever activities make it present, the agent (BOAC) is the managing agent (Bomze v. Nardis Sportswear, 165 P. 2d 33, supra).
On the basis of the foregoing reasons and under the facts herein, I find ample support for my ultimate conclusion that the defendant BCPA was for jurisdictional purposes doing business in this State and as to Quantas, as hereinbefore pointed out, it must be held at this posture of the case to be a successor in interest to BCPA.
Accordingly, the motion to vacate the service of the summons herein is denied. Within 20 days after the service of a copy of the order to be entered hereon, movants shall serve a general notice of appearance.
Settle order.