[S. F. No. 13948.   In Bank.—August 10, 1932.]

NETTIE TREAT, Appellant, v. VIRGINIA B. BURNS, Respondent.

A. V. Dalrymple and Eric Lyders for Appellant.

Emil G. Buehrer for Respondent.

WASTE, C. J.—Plaintiff appeals from an adverse judgment entered in this action to foreclose a chattel mortgage. Defendant Coffin failed to appear in the action and her default was duly entered.

It appears from the evidence that one Max Rosenberg advanced to plaintiff and her husband the necessary money with which to purchase the lease and furnishings of a certain hotel. After conducting the establishment for a time plaintiff sold the lease and furnishings to defendant Julia A. Coffin for $2,800, the purchaser paying $1200 in cash and giving her note and chattel mortgage on the furnishings for the $1600 balance, which balance at the time of the trial had been reduced to $1400. The note and mortgage bear date July 12, 1927, and because of Rosenberg's financial backing in the undertaking plaintiff had them run in his favor. ■ On July 12, 1929, the note was indorsed over to the plaintiff. Such transfer of the indebtedness carried the security with it as an incident thereto. (Sec. 2936, Civ. Code; *Adler* v. *Sargent,* 109 Cal. 42, 48 [41 Pac. 799].) At the time of its execution and delivery the mortgage failed to comply with the provisions of section 2957 of the Civil Code in that it was not then accompanied by the usual "good faith" affidavit nor was it then recorded. Subsequently, and about July 6, 1928, Mrs. Coffin, the purchaser and plaintiff's mortgagor, sold the lease and furnishings to the defendant Burns for $1600, the latter paying $400 in cash and executing and delivering her note and chattel mortgage to Mrs. Coffin to secure the balance. The bill of sale running from Mrs. Coffin to the defendant Burns was duly recorded on July 6, 1928. It was after this that plaintiff's mortgage was made to comply with section 2957, *supra,* and thereupon recorded. It necessarily follows, therefore, that defendant's bill of sale, though subsequent in point of time, takes priority over and is not subject to plaintiff's chattel mortgage, unless it appears that defendant had *actual* knowledge of the existence of plaintiff's mortgage at the time she purchased the lease and furnishings from plaintiff's mortgagor. ■ It is well settled that an unrecorded chattel mortgage, or one failing to comply with the terms of section 2957, *supra,* is "nevertheless valid between the parties . . . and persons who, before parting with value, have actual notice thereof". (Sec. 2973, Civ. Code; *Wolpert* v. *Gripton,* 213 Cal. 474 [2 Pac. (2d) 767].)

Upon the issue of knowledge the trial court found that defendant "had no knowledge or information or notice,

actual or constructive, of the existence of [plaintiff's] mortgage when she purchased said personal property . . . nor had she any notice, knowledge or information actual or constructive of the claim of plaintiff to said mortgage or property''. If there is any evidence in the record to sustain this finding the judgment for defendant must, of course, be affirmed.

We have examined the record and conclude that the quoted finding is not only unsupported by but is contrary to the evidence. The defendant when on the stand denied that the seller, plaintiff's mortgagor, had told her of the existence of a chattel mortgage on the furnishings pending the negotiations for defendant's purchase thereof. She did make the significant statement, however, that ''she [the seller] explained that [the existence of plaintiff's chattel mortgage] to Mr. Zimmerman''. Zimmerman was the defendant's attorney and representative in the transaction leading up to and resulting in defendant's purchase of the mortgaged property. Defendant also testified that she had heard ''rumors'' of the existence of plaintiff's chattel mortgage ''when I was talking of buying the place''; that she thereupon had her attorney investigate the matter, and that she subsequently bought the furnishings ''on the strength'' of his report that he was unable to find such a mortgage of record.

The defendant's attorney when called to the stand testified that his client (the defendant) and Mrs. Carson (the real estate broker who handled the deal) met at his office to discuss the purchase of the lease and hotel furnishings; that ''there was mention made of an indebtedness existing, previous indebtedness, . . . from Mrs. Coffin [the seller] to Mrs. Treat [plaintiff], or to Mr. Rosenberg [plaintiff's financial backer], as the case might have been. . . . They talked about the chattel mortgage, but I was never able to have the chattel mortgage produced to me.'' He also testified that when his client was about to consummate the deal he telephoned the plaintiff relative to the chattel mortgage and that plaintiff said, ''Mr. Rosenberg has that mortgage, you better see him''; that he thereupon communicated with Rosenberg, who was unable to find it among his papers; that he (the witness) thereupon searched the records and found no mortgage on file; that he so advised his client

(the defendant) "and she decided to go ahead with the transaction"; that the deal was then closed and plaintiff thereupon informed that defendant could not find her mortgage of record and would not therefore "recognize it".

The plaintiff called Mrs. Carson, the real estate broker, in rebuttal, and she testified that the defendant came to her office in response to an advertisement; that she explained the transaction to the defendant and told her and her attorney of the existence of a chattel mortgage on the furnishings; that it was learned that the instrument was in the office of one Mathews; that defendant's attorney sent her (the witness) to Mathews' office to ascertain if he had possession of the instrument; that she visited Mathews, who, upon interrogation as to the existence of plaintiff's mortgage, held out a paper and said, "Why, this is the mortgage, but I can't show it to you, you have no right to see it"; that she reported to the defendant's attorney of her visit to Mathews' office; that she told him Mathews had possession of the mortgage; that in drawing up the papers closing the deal by which defendant purchased the mortgaged chattels, defendant's attorney first drafted a set of papers recognizing the existence of plaintiff's mortgage, but substituted therefor a second set which made no mention of plaintiff's mortgage.

The foregoing rebuttal testimony was not denied or contradicted by the defendant or her attorney, the latter, upon being recalled to the stand, merely stating that the real estate broker may have mentioned Mathews to him, he did not recall; that he did not go to see Mathews.

In reviewing the evidence on the issue of defendant's knowledge of the existence of plaintiff's chattel mortgage, we have confined ourselves solely to the defendant's evidence and so much of plaintiff's evidence as stands uncontradicted. The trial court's finding in favor of defendant necessitates such a course. However, we are satisfied that the foregoing evidence conclusively establishes that the defendant and her attorney had actual knowledge of the existence and the amount of plaintiff's chattel mortgage prior to the consummation of the transaction by which the defendant undertook to and did purchase the mortgaged property. This being so, the judgment for the defendant must be reversed. It is immaterial that defendant's efforts to locate the written evi-

dence of such mortgage, of which she had actual knowledge, proved unavailing. The important and determinative feature of the case is that defendant, before undertaking to purchase the hotel furnishings and before advancing any money on the purchase price, was informed or had knowledge of the existence of a lien thereon in favor of the plaintiff.

Judgment reversed.

Tyler, J., *pro tem.*, Seawell, J., Shenk, J., Langdon, J., Preston, J., and Curtis, J., concurred.