The Federal Land Bank of Columbia, a corporation, *Appellant,* v. Helen K. Dekle, *Appellee.*

148 So. 756.

Division A.

Opinion filed March 3, 1933.

Opinion on Re-hearing filed June 1, 1933.

*James H. Finch,* for Appellant;

*H. L. Grace, John H. Carter* and *John H. Carter, Jr.,* for Appellee.

TERRELL, J.—On the 16th day of February, 1920, Pennington & Evans, a partnership, by the joint action of both parties joined by their wives, executed a purchase money mortgage to J. C. Sims, securing three notes of $2,500.00 each, or a total purchase price of $7,500.00. May 15, 1920, Pennington and Evans, by it partner, C. R. Evans, executed a second mortgage to Helen K. Dekle securing a note in the sum of $4,000.000 and describing the identical lands described in the mortgage of February 16, 1920, to Sims. Helen K. Dekle was a sister-in-law of Evans, was living in the same house with him, but did not record her mortgage till March 7, 1927, almost seven years after its execution. Sims recorded his mortgage promptly.

On June 16, 1927, C. R. Evans and wife executed their mortgage to The Federal Land Bank of Columbia in the sum of $7,500.00. This mortgage described the same lands as were described in the Sims and Dekle mortgages plus 240 acres additional lands. In his application for the loan secured by this mortgage, said application being dated August 3, 1926, Evans represented and guaranteed that the mortgage to J. C. Sims for $5,000.00 and the one to Henry Sims for $1,100.00 were the only liens, claims or encumbrances outstanding against the said lands. He also represented that the $7,500.00 loan was to be used to pay these mortgages and that the Federal Lank Bank of Columbia should a first lien on the lands mortgaged to secure said loan. The loan was made to Evans on these representations which were followed by an abstract of title and opinion of attorneys furnished by him, but none of these showed the existence of the Dekle mortgage, which was, however, secured by Evans and placed on record after he furnished the abstract, but before he secured the loan.

In April, 1930, Evans having defaulted in his payments on the mortgage to The Federal Land Bank of Columbia, the said bank brought its suit to foreclose. The mortgage of Helen K. Dekle, not appearing on record, she was made a party to this suit which was prosecuted to final decree of foreclosure, but before sale could be made, that is to say, on the 4th day of August, 1930, Helen K. Dekle, as complainant, instituted suit against the Federal Land Bank of Columbia and Pennington & Evans to foreclose her mortgage of May 15, 1920. To the bill of complaint of Helen K. Dekle, Pennington & Evans filed their answer admitting the material allegations thereof. The Federal Land Bank also answered the said bill challenging the validity of the mortgage of Helen K. Dekle for various irregularities and set up the further defense of its right to be subrogated to the rights of J. C. Sims in and to the mortgage of February 16, 1920. A demurrer to portions of the answer of The Federal Land Bank of Columbia was sustained, testimony was taken and a final decree was entered in favor of Helen K. Dekle. This appeal is from that final decree.

The effect of the final decree was to raise the mortgage of Helen K. Dekle from a second to a first mortgage, to hold it valid and superior to the mortgage of The Federal Land Bank and to give her a lien on all the lands embraced in her mortgage including other lands which did not appear in said mortgage as recorded. It further directed a sale of the lands to pay the amount due her in full and required the surplus to be applied on the mortgage of the Federal Land Bank of Columbia until it should be satisfied.

The first question brought here for our consideration is whether or not, under the facts stated, The Federal Land Bank of Columbia had a right to subrogation to all the rights, title and interest of J. C. Sims in his mortgage of February 16, 1920.

The controlling law and facts in this case, as to the right of appellant to subrogation, are similar to and are controlled by the decision of this Court in The Federal Land Bank of Columbia v. W. B. Godwin, et al., filed January 9th, 1933. The same guaranty was given the bank, the same precaution was taken by it and the same fraud and deception were practice on it. The judgment below as to the right of appellant to subrogation to the amount of the Sims mortgages, $6,100, is, therefore, reversed on authority of that case.

It is next contended that the description of the lands in the Dekle mortgage is fatally defective in that they are referred to as being in Calhoun County while in fact they are in Jackson County, Florida.

If the description had been by metes and bounds there might be merit to this contention, but since it is by the usual government surveys and subdivisions, it is without merit. The reference to Calhoun County is general while the description by government surveys is specific and is sufficient to put appellant on notice as to what lands were referred to. The description also furnishes ample information by which a surveyor could locate the lands and that is all that the law requires. Black v. Skinner Manufacturing Company, 53 Fla. 1090, 43 So. 919; Ausley v. Graham, 73 Fla. 388, 74 So. 505; Bank of South Jacksonville v. Cammar, 89 Fla. 296, 103 So. 827.

The third question challenges the sufficiency of the acknowledgment of the execution of the Dekle mortgage.

The acknowledgment was made by C. R. Evans for the partnership of Pennington & Evans and is as follows:

"STATE OF FLORIDA,

"COUNTY OF JACKSON.

"I hereby certify that on this the 15th day of May, 1920, before me personally appeared C. R. Evans, General Man-

ager of Pennington & Evans * * * to me well known to be the individuals described in and who executed the foregoing conveyance to H. K. Dekle and severally acknowledged the execution to be their free act and deed for the uses and purposes therein mentioned."

The rule in this State is that an instrument executed by one member of a partnership in the firm's name and legally binding on the partnership and entitled to be recorded under the registry statute of Florida may be admitted to record on the acknowledgment of the partner who executed it. McCoy v. Boley, 21 Fla. 803; Summer v. Mitchell, 29 Fla. 129, 10 So. 562. Under this rule the acknowledgment was sufficient.

The concluding question brought up for our consideration challenges the sufficiency of the record of the Dekle mortgage, it appearing that the said mortgage described the lands as "all the N½ of Sec. 1, Township 3, north of Range 10 West" while the record of the mortgage described said lands as "all of the W½ of Sec. 1, Township 3, North, Range 10 West," otherwise the descriptions were identical. The recorder, in other words, confused "N" with "W," the result of which was to leave the NE¼ of the section out of the mortgage as recorded, but which was included in the mortgage as executed. It is contended that inasmuch as the record of the mortgage contained this omission, The Federal Land Bank was without actual or constructive notice that said described lands were included in the Dekle mortgage and that consequently its mortgage was superior to the Dekle mortgage as to said lands.

There might be merit in this contention except for Section 3820 R. G. S. of 1920; Section 5708 C. G. L. of 1827. In states with statutes like this it is generally held that constructive notice of the subject matter of the instrument takes place from the date it is placed with the recording

officer to be recorded and that the efficacy of such notice will not be destroyed if errors are made in the recording. Jones Law of Mortgages on Real Property (8th Ed.), Section 636, 41 C. J. 567, Section 525. Other assignments have been examined, but a discussion of them would serve no useful purpose.

It follows that the judgment below as to subrogation is reversed, otherwise is is affirmed.

Reversed in part, affirmed in part.

DAVIS, C. J., and WHITFIELD, J., concur.

BROWN, J., concurs specially.

BUFORD, J., dissents.

BROWN, J., (Concurring specially with the opinion of Mr. Justice TERRELL).—While the decision in this case, and in the recent case of Federal Land Bank of Columbia v. Godwin on re-hearing, which was handed down January 9, 1933, have, in my opinion, the effect of overruling in part the case of Boley v. Daniel, 72 Fla. 121, 72 So. 644, I nevertheless concur. The opinion in the case of Boley v. Daniel is a strong one. I had long regarded it as the last word on that subject. It was only after considerable study and investigation of the authorities that I became convinced that this Court would be justified in departing from it. I agree with Mr. Justice BUFORD that if in this case we followed Boley v. Daniel, the decree of the court below would have to be affirmed, but I also agree with Mr. Justice TERRELL in holding that the Federal Land Bank is entitled to be subrogated to the lien of the first mortgage of J. C. Sims, in accordance with the broader application of the principle of subrogation adopted by us on re-hearing in the recent case of Federal Land Bank v. Godwin. Some of the authorities which have led me to this conclusion are: Those

cited in the opinion of Mr. Justice Terrell in the Godwin case, *supra; also* 25 R. C. L., Sections 1, 2 and 3, pp. 1313-1314; Sheldon on Subrogation, p. 4; Harris' Law of Subrogation, pp. 1-2; 60 C. J. 706 *et Seq.*, 807-816; Jones on Mortgages, 8th ed., Sections 1111-1113-1115; and the many cases cited in a valuable note in 70 A. L. R., beginning with p. 1398, to which attention was called by Commissioner Davis in his opinion in the Godwin case, 136 So. 513, 516.

The points in the case of Boley v. Daniel, which seem to me to be out of harmony with the principles we have adopted in this case, are: (1) The failure to recognize the agreement between Lee Daniel and Brooks that the mortgage of the former should constitute a first lien on the premises, as being sufficient to sustain the right of subrogation; and (2) the doctrine laid down to the effect that on payment of the first mortgage, the second mortgage became *ipso facto,* by operation of law, the first lien on the property, and a "vested right."

In certain respects, however, the facts in the case of Boley v. Daniel are unlike those in the case here under consideration, and also unlike the facts in the case of Forman and Company v. First National Bank of Quincy, 76 Fla. 48, 79 So. 742.

In the case of Boley v. Daniel there does not appear to have been any effort made, or care exercised, on the part of Daniel to make his mortgage the first lien. For aught that appears in the record of that case, the Boley mortgage was probably recorded on the public records of Escambia County and might by the exercise of ordinary diligence have been discovered. The record does not disclose any representation made by Brooks to Daniel that there was no other mortgage against the property. Daniel's belief that there was not, appears to have been born within his own mind. There was no mistake arising from an examination

of the record, resulting in the finding of no prior lien, followed later by the discovery of an intervening lien. Nor was there any mistake in acting on the faith of a representation that there was no other lien, which later proved to be untrue. So the facts in the case of Boley v. Daniel are weaker than in the Forman case and are much weaker than in the instant case. There was nothing in the case of Boley v. Daniel indicating fraud excepting the agreement that Daniel should be given a first lien on the property, which he did not get. It is thus easier to distinguish the facts in these cases than to reconcile the doctrine and principles announced. In Boley v. Daniel, it was announced that in order for the right to subrogation to have existed in that case, would have had to rest upon an agreement that the lien of the first mortgage should be kept alive; whereas, in the Forman case, it was held that such an agreement would, under the facts of that case, be implied. Another feature contained in Boley v. Daniel which is at variance with the principle applied in this case was the pronouncement that the second mortgagee, upon cancellation of the first mortgage, acquired a "vested right" as first lienor. If the cancellation of the first mortgage operates *ipso facto* to elevate the second mortgagee to the position of the first mortgagee as a matter of law, would that not take place in cases where there was an express agreement between the parties as well as in cases where no such agreement existed? For usually the junior mortgagee is not a party to the agreement whether express or implied. He usually has no connection with the transaction whatever. He pays nothing. He invests nothing; he does not change his position, but merely holds his mortgage. And, under the rule announced in Boley v. Daniel, when the transaction between the other parties is over, he awakes to find that he has been catapulted into the position of first mortgagee without any ef-

fort or expenditure on his part. In the instant case it might be noted that the intervening mortgagee, Helen K. Dekle (who, so far as the record shows, was entirely free from fraud or misconduct whatsoever), took her mortgage as a second mortgage and expressly made it subject to the Sims mortgage, as to which subrogation is here sought by the bank. See 41 C. J. pp. 590-91. If we refuse the bank the right of subrogation to the lien of the J. C. Sims first mortgage, to the extent of the amount paid by it to retire that mortgage, the second mortgage would, without any consideration moving from her, be enriched at the loss of the bank; whereas, if the doctrine of subrogation be applied, the bank would be saved from loss, and the second mortgagee would be no worse off than she was before—she would be left in the same position that she was before the bank paid off the first mortgage pursuant to its agreement with the first mortgagor. Thus subrogation in this case would further the ends of justice without imposing any new burden upon anyone.

For these reasons, I concur in the opinion of Mr. Justice TERRELL that subrogation should be allowed in this case and that the judgment below should be reversed with directions to allow such subrogation. I hardly deem it necessary for the Court to pass upon the other questions raised, as to one of which, at least, I have serious doubts.

BUFORD, J., (Dissenting).—Pennington & Evans, a copartnership, purchased land from J. C. Sims for the price of $7,500.00. A mortgage was executed to Simms for $5,000.00, the balance of the purchase price. The mortgage was dated February 16, 1920. On May 15, 1920, Pennington & Evans, by C. R. Evans, executed a mortgage to Helen K. Dekle to secure the payment of $4,000.00. This mortgage embraces the lands purchased from Sims and was shown on its face to be a second mortgage. This second

mortgage was not recorded until March 7, 1927. When it was recorded an error was made in' the description of the land as to a part of Section 1, Township 3 N., Range 10 West. . The proper description and that contained in the mortgage was of the North Half of Section 1, Township 3 North of Range 10 West. The record thereof reads, all of West Half of Section 1, Township 3 North of Range 10 West. Of this we shall speak later.

In August of 1926 Evans commenced negotiations with the Federal Land Bank for a loan of $10,000.00. In his application for loan he reported that mortgages were held by J. C. Sims to secure the sum of $5,000.00 and by Henry Sims to secure $1,100.00. He did not report the Dekle mortgage. Negotiations went along until June 16, 1927, two months and nine days after the Dekle mortgage was recorded, when the loan was made from Federal Land Bank to Evans, Evans having in the meantime acquired the interest of his partner, Pennington, in the lands. The mortgage from Evans and wife to the Federal Land Bank was dated June 16, 1927, the same day it was recorded. The mortgage to J. C. Sims and the mortgage to Henry Sims were paid off, discharged and cancelled, the payment being made with the money received from the Federal Land. Bank.

On the 4th day of August, 1930, Helen K. Dekle exhibited her bill of complaint in the Circuit Court of Jackson County seeking foreclosure of her mortgage for $4,00.00; making the Federal Land Bank of Columbia, a corporation, and Pennington & Evans, a co-partnership, parties defendant. By the answer that the Federal Land Bank sought the benefit of subrogation under the Sims mortgage. By final decree the Court held the Federal Land Bank not entitled to the benefits of subrogation. The decree of the court in this regard should be affirmed on authority of the

opinion and judgment in the case of Boley v. Daniel, 72 Fla. 121, 72 Sou. 644.

The Dekle mortgage was on record on June 16, 1927, the date the mortgage to Federal Land Bank was executed and recorded and had been on record since the 7th day of the preceding March, a little more than three months. The mortgage to Federal Land Bank was in an amount greater than the aggregate of the two Sims mortgages.

I cannot agree that Federal Land Bank can be heard to disclaim notice of the existing mortgage in favor of Mrs. Dekle. To hold that under the circumstances of this case the Federal Land Bank is entitled to be subrogated to the rights of J. C. Sims and Henry Sims under the respective mortgages executed by Pennington & Evans to them would, in my opinion, necessarily overrule the law as enunciated in Boley v. Daniels, *supra,* which has been accepted as the law in this State since 1917.

It appears to me that to depart from the principles as enunciated as the law in Boley v. Daniels, *supra,* would be to open the door to unlimited frauds against holders of second and subsequent mortgages. It is true that the Dekle mortgage was held off of record several years, but it was on record more than three months prior to the execution of the Federal Land Bank mortgage and if the Federal Land Bank did not actually know of its existence at the time of the execution of its mortgage such lack of knowledge was the result of negligence on the part of the bank and its agents.

If Mrs. Dekle, holding a second mortgage, knew that the mortgagor was able to pay off the first mortgage and also knew that the mortgagor wished to borrow additional money for the conduct of its business and was negotiating to borrow money with which to pay off the first mortgages and then use its available money in the conduct of its business,

it was her right to record her mortgage so that it would be a first lien, in event that the first mortgages were cancelled. She is not shown to have represented to anyone that she did not have a valid claim against Pennington & Evans, or that she did not have a valid mortgage to secure that claim, and she is not shown to have been in anywise responsible for the representations that were made to the Federal Land Bank in this connection.

By recording her mortgage she secured to herself the rights of one holding the first lien when the prior mortgages were cancelled subsequent to the recording of her mortgage and I do not think that she should be deprived of that right because of the fact that a subsequent mortgagee failed to examine the records which established her right. Therefore, I cannot concur with the majority opinion insofar as it holds Federal Land Bank entitled to subrogation.

ON PETITION FOR RE-HEARING

TERRELL, J.—On petition for re-hearing it is pointed out that subrogation to the amount of the J. C. Sims mortgage or $6,100.00 was allowed in favor of the Federal Land Bank of Columbia by the main opinion. It is now contended that this amount should be limited to $5,236.00 as this was the amount of the loan actually applied to the J. C. Sims mortgage. In his application for the loan to the Federal Land Bank by Mr. Evans it is shown that the amount of the Sims mortgage was $5,236.00, but there are other items in the application which were paid from the loan that may entitle the Federal Land Bank to subrogation with respect to. The record is not clear as to some of them in this respect.

The opinion heretofore entered should not be construed as precluding the chancellor below from examining the various items listed for payment with the proceeds of the loan along with the J. C. Sims mortgage with a view of deter-

mining which of them were actually paid with the said loan and with respect to which subrogating should be allowed in favor of the Federal Land Bank of Columbia and enter his judgment accordingly.

Re-hearing denied.

DAVIS, C. J., and ELLIS, J., concur;

WHITFIELD, P. J., and BUFORD, J., concur in the opinion and judgment.

BROWN, J. concurring specially:

Subrogation should be strictly confined to the balance due on the J. C. Sims' mortgage and which was actually paid out of the amount of the loan made by the Federal Land Bank, which balance appears to have been $5,236.00. See page 98 of record. This also appears to have been expressly admitted in the brief filed by counsel for the Land Bank as being the correct amount.