**STAUNTON INDUSTRIAL LOAN CORP. et al. v. WILSON.**

No. 6258.

United States Court of Appeals Fourth Circuit.

Argued June 13, 1951.

Decided Aug. 2, 1951.

Wayt B. Timberlake, Jr., Staunton, Va., for appellants.

W. W. Wharton, Harrisonburg, Va., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a decision of the United States District Court for the Western District of Virginia. Appellants, Staunton Industrial Loan Corporation, a Virginia corporation, (hereinafter called Staunton) and Bessie S. Abdallah filed petitions in the bankruptcy proceedings of Showker Brothers, Incorporated, (hereinafter called Showker), asserting liens on certain motor vehicles of the bankrupt, and asking disclaimer of these vehicles on the ground their value was less than the claim of these two appellants. Appellant, David S. Showker, also filed a petition asserting a second lien on the same vehicles upon which Bessie Abdallah claimed a first lien.

The referee in bankruptcy denied the validity of the liens of all appellants and the District Court affirmed the referee's order.

Prior to October, 1947, Showker had been operated as a partnership. On November 3, 1947, shortly after its incorporation, it borrowed $19,000.00 from Staunton. The promissory note given Staunton recited as collateral for the loan a 1946 Ford truck, a 1947 Ford Truck and a 1948 International tractor trailer. Chattel mortgages dated March 31, 1948, were registered on the title certificates of the two Ford trucks by the Division of Motor Vehicles of the Commonwealth of Virginia. Similarly, on February 2, 1949, a chattel mortgage was registered on the International truck. The facts show, however, that written chattel mortgages were not executed on the Ford trucks until April 15, 1948, and on the International truck until July 1, 1949. Showker retained possession of all three vehicles until it filed a voluntary petition in bankruptcy on March 12, 1950. By that time, Showker's indebtedness to Staunton had been reduced to $6,600.00.

Bessie Abdallah, a sister of Randolph Showker who was chief stockholder of the Showker corporation, had lent that organization large sums of money. Some of these loans were repaid in preferred stock of Showker, but on March 23, 1949, Showker being still indebted to Mrs. Abdallah to the extent of $13,000.00, she demanded and received title certificates to ten motor vehicles as collateral security for this indebtedness. These title certificates were submitted to the Virginia Division of Motor Vehicles and liens in Mrs. Abdallah's favor were registered thereon. At one point in her testimony, Mrs. Abdallah stated that contemporaneously with the delivery of these title certificates, she received chattel mortgages on the ten motor vehicles. Sometime later she alleged that she was unable to locate these papers, whereupon Showker executed another set which were back dated to March 23, 1949.

David Showker, an uncle of Randolph Showker, was also a creditor of the Showker corporation. On March 23, 1949, he, too, demanded security for his loans, then amounting to $11,000. Second liens were thereupon executed in his favor on the same ten vehicles upon which Mrs. Abdallah claims first liens. Although David Showker's testimony is somewhat confused, one view of it is that a note and written chattel mortgages were executed on these ten vehicles at the time his liens were registered on March 23, 1949. He also had a duplicate note and chattel mortgages ex-

ecuted sometime in August or September of 1949.

The referee in bankruptcy first determined that the alleged instruments in support of the claims of Bessie Abdallah and David Showker were not in existence at the time their liens were recorded upon the title certificates. He then held the liens of all appellants invalid since there were no written mortgages in existence at the time the liens of the parties were registered on the title certificates. He further found, since the recordation of a non-existent lien is void, the subsequent execution of written mortgages did not validate the prior recordation. These findings were approved by the District Court and the parties have appealed to us.

This Court is not free to reverse the lower Court's finding of fact that Mrs. Abdallah and David Showker did not receive written instruments to support their liens contemporaneously with the registration of such liens on the title certificates of the vehicles, unless this finding be clearly erroneous. See United States v. Appalachian Electric Power Co., 4 Cir., 107 F.2d 769; Hudgins v. Gatewood, 4 Cir., 85 F.2d 939; Arundel Corp. v. Walthen, 4 Cir., 55 F.2d 228. In view of the conflicting and confusing statements made by both Mrs. Abdallah and David Showker on cross-examination, we think this finding of the District Court must be accepted as correct.

With the lower Court's determination that the liens of these appellants are invalid, we cannot agree. The heart of this case is the question whether a valid oral chattel mortgage can be created. The general rule is that as between the parties and creditors with notice an oral chattel mortgage is valid. See, e. g., Kearns v. Davis Bros., 186 N.C. 522, 120 S.E. 52; State Bank of Downs v. Abbott, 104 Kan. 344, 179 P. 326; Hart County Deposit Bank v. Hatfield, 236 Ky. 725, 33 S.W.2d 660; Paska v. Saunders, 103 Vt. 204, 153 A. 451. See also 10 Am.Jur. 750 § 52. The rule is succintly stated in 14 C.J.S., Chattel Mortgages § 49, pages 654–655 as follows: "Subject to the limitations, if any, imposed by the statutes of frauds and by other express statutory provisions, a mortgage, although not in writing, is ordinarily held to be valid as between the parties, and against those having actual notice of its existence, provided the oral agreement contains the elements necessary to constitute a valid written mortgage."

There seems to be no Virginia case squarely in point. The most that can be said of the opinion of Judge Baldwin in Siter, Price & Co. v. M'Clanachan, 1845, 2 Gratt 280, 308–309 is that this opinion appears, by implication, to favor the validity of chattel mortgages as between the parties.

The case most clearly in point, which unquestionably favors the instant chattel mortgagees, is Janney v. Bell, 111 F.2d 103, (decided by our Court, 1940), which dealt with the very problem before us. From our opinion in that case, 111 F.2d at pages 104, 105, 107, 108, we quote:

"The general law is pretty well settled that, apart from statutory restrictions, an unrecorded chattel mortgage is good as between the parties. See 11 C.J. 511 and cases cited.

\* \* \* \* \* \*

"It might be remarked in this connection that, since under the general law an unrecorded chattel mortgage is good as between the parties and registration statutes under their general philosophy are enacted for the benefit of third parties, the chattel mortgage should be good as between the parties unless the recordation statute either expressly declares the mortgage void as between the parties or indicates such invalidity of the chattel mortgage by necessary intendment or very clear implication.

\* \* \* \* \* \*

"Various states of the United States have adopted Motor Vehicle Codes containing registration provisions. A majority of the courts in these states have adopted the view that these statutes did not completely over-ride the common law, and that transactions in such vehicles, which were hitherto valid under the general law, still remain valid as between the parties.

\* \* \* \* \* \*

"An analytical and verbal exegesis of the recordation provisions of the Virginia stat-

ute confirms us in our view that it was not the intention of the law makers to render void as between the parties, unrecorded liens and other claims less than title or ownership.

\*    \*    \*    \*    \*    \*

"Again, in Section 17 of the (Virginia) Motor Vehicle Act, Code § 2154(64), we find: 'Said certificate of title, when issued by the division showing a lien or encumbrance, shall be *deemed adequate notice* to the Commonwealth, creditors and purchasers that a lien against the motor vehicle exists.' The use of the words *'adequate notice'* in this connection and the use of the words 'to the Commonwealth, creditors and purchasers' seems to us to be very strong and definite language which, by any fair interpretation, would strongly indicate that this statute is a *notice statute as to third persons* and was not intended to invalidate unrecorded transactions in motor vehicles other than sales as between the immediate parties to that transaction.    (Italics ours.)

\*    \*    \*    \*    \*    \*

"Once more, we find a provision in Virginia Code Section 2154(64): 'Liens shown upon such certificates of title issued by the division pursuant to applications for same, shall have priority over any other liens against such motor vehicle, trailer or semi-trailer, however created and recorded.' We believe that this specific provision giving priority to the recorded liens over other liens is once more a recognition that such other liens may exist and be valid as between the parties. If a lien be void, it is destitute of legal effect—is, in fact, no lien at all—and it would not be accurate in connection with such a lien to use a term of comparison such as priority.' "

■ There is no question but that all the appellants in the case before us have bona-fide claims, nor is it denied that the intention of all parties to these transactions was to create valid liens. In the case of Staunton, it was the clear intent of the parties to create a mortgage as the note given recited as collateral for the loan the vehicles upon which Staunton now asserts liens. The subsequent written mortgages in favor of Mrs. Abdallah and David Showker are, at the least, an acknowledging of Showker's

antecedent debts. We hold, therefore, that valid oral mortgages were created.

Once having determined that the mortgages are valid, we now consider the effect of having such mortgages registered as liens on the title certificates of the vehicles. For the manner of registering a lien, see §§ 46–69 and 46–70 of the Code of Virginia. For our purposes, however, the most important provision of the Virginia Motor Vehicle Registration Act is contained in § 46–71 of the Code of Virginia which reads: "Certificate as notice of lien.— Such certificate of title, when issued by the Division showing a lien or encumberance, shall be deemed adequate notice to the Commonwealth, creditors and purchasers that a lien against the motor vehicle exists and the recording of such reservation of title, lien or encumberance in the county or city wherein the purchaser or debtor resides or elsewhere is not necessary and shall not be required. Motor vehicles, trailers or semi-trailers registered or for which a certificate of title shall have been issued under this title shall not be subjected to, but shall be exempt from, the provisions of §§ 55–88 to 55–90 and 55–152, nor shall recordation of such lien in any other place for any other purpose be required to have any effect."

■ We think an oral mortgage once registered according to law gives notice of a valid lien to creditors. What possible difference can it make to creditors and third-parties whether the lien which appears on the title certificate is evidenced by an oral mortgage or a written mortgage? Certainly, the lien registered on the title certificate gives the same notice, be the underlying mortgage oral or written. The objection that an oral mortgage is not enforceable against creditors since creditors cannot know of the existence of an oral mortgage is without force here. No creditor can complain that he has been mislead, for the lien is registered for all to see. This Court does not believe that technicalities without substance should control.

■ In Virginia today, a man would not buy an automobile on the strength of possession, for the sole evidence of ownership of a motor vehicle is the registered title.

See Thomas v. Mullins, 153 Va. 383, 149 S. E. 494. So, too, a creditor must not be misled by possession, but must look to the title certificate, and when a lien is registered thereon, notice is given, be the mortgage oral or written.

For these reasons the decision of the District Court is reversed.

Reversed.