In the Matter of GEORGE & JOHN HURT, co-partnership composed of George Euel Hurt and John Harvey Hurt, and George Euel Hurt and John Harvey Hurt, as individuals, Debtors.

No. 7714.

United States District Court, S. D. California, N. D.

Feb. 23, 1955.

Thompson & Thompson, William P. Irwin, Fresno, Cal., for receiver.

Hansen & Hansen, N. Wendell Hansen, Fresno, Cal., for debtors.

Preston, Braucht & George, H. C. George, Merced, Cal., for Anglo California Nat. Bank.

Morrison, Hohfeld, Foerster, Shuman & Clark, J. F. Shuman, Scott L. Harrington, San Francisco, Cal., for California Bankers Ass'n as amicus curiae.

YANKWICH, Chief Judge.

On July 21, 1953, George E. and John H. Hurt, a copartnership (to be referred to as "the debtors"), filed a petition for an arrangement under Chapter XI of the Bankruptcy Act.[1] The schedules accompanying the petition listed the chattel mortgage here involved.

On July 23, 1953, the Court approved the petition. Thereafter, on August 10, 1953, the debtor in possession, John Harvey Hurt, filed before the Referee a petition for an Order to Show Cause why certain alleged secured creditors of the debtors should not be hereafter scheduled and treated as unsecured creditors. The Referee issued an order to one such claimed secured creditor, the Anglo California National Bank, Merced Branch (to be referred to as "the bank"), to show cause.

Hearings were had thereafter, and on February 18, 1954, the Referee made his findings, conclusions of law and order, in which he held that a certain chattel mortgage given to the bank to secure the payment of two promissory notes,—one in the sum of $44,583.08, and the other in the sum of $9,600, to the order of the bank as payee, and on which, according to the filed schedules, the sum of $39,273.52 was still due,—and which was recorded in Merced County on December 2, 1952, and in Madera County on December 3, 1952,—was invalid as to the creditors because of defective acknowledgment.

More specifically, the Referee found, in Finding 6, that the bank knew, through its officers, that the property was partnership property, and that George E. Hurt and John H. Hurt were copartners, and were refinancing a debt of the partnership incurred in the purchase of a dairy herd.

The chattel mortgage recited that it was made by "George E. Hurt and John H. Hurt, his son", and mortgaged certain live-stock, as well as certain equipment and alfalfa, located on the premises described as "the Joe F. Silveira Ranch at Le Grand, California, nine miles southeast of Merced." It was on a stand-

1. 11 U.S.C.A. § 701 et seq.

ard California form, and the acknowledgment read as follows:

"State of California ⎱ ss.
"County of Merced ⎰

"On this 1st day of December in the year one thousand nine hundred and fifty two before me, Helen C. Gallison, a Notary Public in and for the County of Merced, State of California, residing therein, duly commissioned and sworn, personally appeared Geo. E. Hurt and John H. Hurt, his son, known to me to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same.

"In Witness Whereof I have hereunto set my hand and affixed my official seal in the County of Merced the day and year in this certificate first above written."

## I.

### The Existence of a Partnership.

The summary of the evidence attached to the Referee's certificate states that John Hurt testified in substance as follows:

"That he and his father signed the said note and chattel mortgage and thereafter continued to buy feed from the said Grain Company; that on June 6, 1953 they executed another note and chattel mortgage and that at the time they signed the said notes and chattel mortgages they were partners and the property given for security therein was partnership property and the debt was a partnership debt, and that it was their intention to mortgage the property belonging to the partnership;

that Ruby and Lillian Hurt, the wives of the partners, are not members of the partnership."

Other testimony by the same witness need not be referred to.

The same summary contains the gist of the testimony of Letus A. Wallace, in which he stated:

"That he was the manager of the Merced Branch of the Anglo Bank; that at the time the Hurts signed the notes and chattel mortgage he was the assistant manager of said Bank; that the Hurts gave the bank the financial statement given in evidence as Exhibit F of said Bank; that the Hurts' bank account in the bank was under the name of John and George Hurt, a partnership and that he knew that the said Hurts were a partnership."

 A transcript of the testimony is not before the Court. Indeed, we are informed that no shorthand reporter was present at the hearings before the Referee. There being no evidence before us to show that the summary is incorrect, it must be presumed to be correct. We must also assume that the finding that the Hurts were partners is sustained by the evidence,[2] although there is no evidence as to the respective interests of the two members in the partnership, whether or not it was an equal partnership, whether the son was taken in by the father,—as sometimes happens in family partnerships,—without any contribution to the capital,—what share of the profits he received, or losses he shared, or any of the other conditions which go into an agreement of partnership.[3]

---

2. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. General Bankruptcy Order 47, 11 U.S.C.A. following section 53; Brown v. Freedman, 1 Cir., 1942, 125 F.2d 151; Staunton Industrial Loan Corp. v. Wilson, 4 Cir., 1951, 190 F.2d 706, 708–710; In re Leichter, 3 Cir., 1952, 197 F.2d 955, 957–959; Ward v. Deavers, 1952, 92 U.S.App.D.C. 167, 203 F.2d 72, 76; Where the evidence is not brought up, the findings must be accepted

as sustained by the evidence before the trier of fact. Rickard v. Thompson, 9 Cir., 1934, 72 F.2d 807, 809; Bakersfield Abstract Co. v. Buckley, 9 Cir., 1938, 100 F.2d 530; Bernards v. Johnson, 9 Cir., 1939, 103 F.2d 567, and see, Union Pacific R. R. Co. v. Bridal Veil Lumber Co., 9 Cir., 1955, on rehearing, 219 F.2d 825.

3. Stats. of Cal., 1929, ch. 864, p. 1896 et seq.; Cal. Corporation Code, § 15001 et

## II.

## The Acknowledgment.

The Referee found in Finding 8:

"The debt evidenced by the said notes and for which the said Mortgage was given as security was incurred on behalf of the partnership George & John Hurt by the said George E. Hurt and John H. Hurt."

In his legal conclusions he concluded, conclusion 1, that:

"The Anglo California National Bank mortgage of live-stock dated the 1st day of December, 1952, was not acknowledged, proved, or certified in manner as required by the law of the State of California thereunto pertaining and is void as against the debtors in possession appointed by this court to operate the business of the said debtor partnership in their capacity as representing the creditors and the subsequent purchasers and encumbrancers in good faith and for value of the personal property described in the said mortgage, and that the personal property so described therein is free and clear of any lien for security in favor of the Anglo California National Bank of San Francisco purporting to exist against the same by virtue of the said chattel mortgage."

On the same day, the Referee made an order classifying the creditors, and in Paragraph 1, found that the mortgage of the bank was invalid as against subsequent creditors, and that the bank was not a secured creditor, but was a general unsecured creditor, and entitled to such classification only.

The Findings and Order were made for the purpose of determining how certain creditors were to be treated in any arrangement to be made.

The conclusion of the Referee is based upon the contention that there was no "substantial" compliance with Section 1190(a) of the California Civil Code which reads:

"The certificate of acknowledgment of an instrument executed by a partnership *must be substantially in the following form:*

"State of ———
"County of ——— } *ss.*

"On this ——— day of ———, in the year ———, before me (here insert the name and quality of the officer), personally appeared ———, known to me (or proved to me on the oath of ———) to be one of the partners of the partnership that executed the within instrument, and acknowledged to me that such partnership executed the same." (Emphasis added.)

I am of the view that the Referee was wrong in his interpretation of the requirements of this section.

## III.

## The Purpose of the Uniform Partnership Act.

Legislative history shows that this form of acknowledgment was intended to implement the changes made in the partnership law of California in 1929, when the Uniform Partnership Act was adopted which, among other rights, gave to *one of the partners* the right to execute a valid deed to the property of the partnership.[4]

Before the adoption of this Act, a partnership was not considered a legal entity in California and real property acquired by it could be transferred only by a conveyance joined in by *all* the partners. Subject to equitable rights, which do not concern us here, a conveyance ex-

---

seq.; California Employment Stabilization Commission v. Walters, 1944, 64 Cal.App.2d 554, 558, 149 P.2d 17; Kaufman-Brown Potato Co. v. Long, 9 Cir., 1950, 182 F.2d 594. No certificate of doing business under a fictitious name was filed. Cal. Civil Code, § 2466. Indeed, none was necessary as the partners did business under a designation containing both names *in full.* Andrews v. Glick. 1928, 205 Cal. 699, 701–702, 272 P. 587.

**4.** California Corporation Code, § 15010.

ecuted by one of the partners transferred his interest only.[5]

A study of the Section of the Uniform Partnership Act which is now Section 15010 of the California Corporation Code, makes it quite evident that one of the objects of the enactment was to do away with this rule and to make a conveyance *by one* of the partners effective not only as *to his interest* in the partnership, but as *to all* the partnership property, provided the acknowledgment conformed to the requirements of Section 1190(a) of the California Civil Code. The execution of an instrument by one of the partners is *only one* of the methods recognized by Section 15010 of the California Corporation Code for conveying property belonging to a partnership. A breakdown of this section will demonstrate the variety of conveyancings it was to cover and show the instances in which the provisions of Section 1190(a) of the California Civil Code were or were not intended to apply.

Subsection (1), in the part material here, reads:

"(1) Where title to real property is in the partnership name, any partner may convey title to such property by a conveyance executed in the partnership name * * *."

This provides for a situation where the property is in the partnership name,— that is, Smith & Jones, a co-partnership, or Smith & Jones Cattle Company, a co-partnership,—in which event one member of the partnership may execute the instrument of conveyance for the partnership and the certificate in the form required by Section 1190(a) *would be necessary.*

Subsection (2) reads:

"(2) Where title to real property is in the name of the partnership, a conveyance executed by a partner, in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of paragraph (1) of Section 15009."

This means that where the property is in the name of the partnership, as an entity, a conveyance executed by a partner in his own name,—that is, *without mentioning the partnership,*—would pass the equitable title. This makes effective a conveyance by one partner, provided title is in the partnership and the conveyance is for partnership purposes.[6]

Subsection (3) reads:

"(3) Where title to real property is in the name of one or more of the partners, whether or not the record discloses the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property unless the partner's act binds the partnership."

This makes valid deeds executed by the partners in whose name the property stands, although the record *does not* disclose the right of the partnership, but gives the partnership a remedy against a dishonest partner who conveys the property for other than partnership purposes. However, if the property is in the name of one or more of the partners, *whether or not the record discloses the partner-*

5. Dupuy v. Leavenworth, 1861, 17 Cal. 262, 267; Jauman v. McCusick, 1913, 166 Cal. 517, 523, 137 P. 254; Martin v. Emerson, 1922, 59 Cal.App. 724, 727–728, 211 P. 832; Pine v. French, 1927, 83 Cal.App. 276, 282, 256 P. 582; Downs v. National Bank of Bakersfield, 1929, 101 Cal.App. 712, 714, 282 P. 420.

6. This overcomes the limitations which the California law of partnership, as it existed prior to 1929, attached to conveyances by one partner. See cases cited in Note 5. And see, Woodward v. McAdam, 1894, 101 Cal. 438, 35 P. 1016; Shirran v. Dallas, 1913, 21 Cal.App. 405, 418, 132 P. 454, 462. Before the amendment, a partnership was not considered a legal entity. First Nat. Trust & Sav. Bank of San Diego v. Industrial Accident Comm., 1931, 213 Cal. 322, 331–332, 2 P.2d 347, 78 A.L.R. 1324; National Automobile Ins. Co. v. Industrial Accident Commission, 1938, 11 Cal.2d 694, 697, 81 P.2d 928. But even then, a contract executed by all the partners would inure to the benefit of the partnership as then composed.

*ship interest,* a conveyance by the partners in whose names the title stands will hold if the object for which the conveyance was made was such as to bind the partnership.

Subsection (4) reads:

"(4) Where the title to real property is in the name of one or more or all the partners, or in a third person in trust for the partnership, a conveyance executed by a partner in the partnership name, or in his own name, passes the equitable interest of the partnership."

This applies the equitable principle which the courts recognized before.[7]

▮ And finally, Subsection (5):

"(5) Where the title to real property is in the names of all the partners a conveyance executed by all the partners passes all their rights in such property."

This means that when title stands, *as here,* in the name of all the partners, a conveyance by them passes the title. In such instance, Section 1190(a) *does not* apply. For a conveyance by all in whose name the property stands passes all the title which the persons executing the instrument have in the property in *whatever capacity they hold it.*[8] It is evident, therefore, that Section 1190(a) of the California Civil Code is merely an implementation to cover certain forms of acknowledgment *not otherwise provided for.* Others are governed by the general provisions as to acknowledgment of instruments conveying real property. California Civil Code, § 1189.

Section 1190(a) *does not* restrict the rights which previous legislation had *conferred* upon partnerships when it expanded the conveyancing rights of partners. The Section contemplates only a situation in which one partner *might* convey for the partnership. If it contemplated situations where more than one partner conveys, the wording of the form would have to be changed entirely and adapted to each of the five situations covered by Section 15010 of the California Corporation Code.

▮ So the logical interpretation of Section 1190(a), when contrasted with the broader partnership rights conferred two years before, is that it was intended to introduce a form to be used when *one partner* conveyed property standing *in the name of the partnership.* But where the property stood in the name of all partners, an acknowledgment, such as provided for in Section 1189 of the California Civil Code, with the names of all the partners, would be valid. To support this conclusion, we refer to Section 2957 of the California Civil Code which reads in part:

"A mortgage of personal property or crops is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless; "1. It is acknowledged, or proved and certified in like manner as grants of real property."

This also requires reference to Section 1189 of the California Civil Code which provides for the manner of acknowledging grants of real property, and reads in part:

"The certificate of acknowledgment, unless it is otherwise in this article provided, must be substantially in the following form:

"State of ———, }
"County of ———. } ss.

"On this ——— day of ———, in the year ———, before me (here insert name and quality of the officer), personally appeared ———————, known to me (or proved to me on the oath of ———————) to be the person whose name is subscribed to the within instrument, and acknowledge that he (she or they) executed the same. * * * "

---

7. See cases cited in Note 5.

8. See, Jauman v. McCusick, supra, Note 5; Pine v. French, supra, Note 5. And see, Davis v. Turner, 4 Cir., 1903, 120 F. 605.

Statutory provisions relating to acknowledgments are construed liberally. In 1 C.J.S., Acknowledgments, § 91a, the principle is stated in this manner:

"While the certificate must contain the essentials prescribed by statute, substantial, rather than literal, compliance with the statute is all that is necessary."

Amplifying, the authors say:

"A certificate of acknowledgment must be in substantial conformity to the requirements of the statute under which the acknowledgment is taken, but, since it is the policy of the law to uphold certificates where the substance is found and not to suffer conveyances or other instruments or the proof of them to be defeated by technical or unsubstantial objections, a literal compliance with the statute is not to be required and certificates will be given a liberal construction in order to sustain them, if they substantially conform to the statutory provisions as to the material facts which are to be embodied in them, the reason for this leniency having been stated to be based upon the fact that of necessity acknowledgments are frequently taken before illiterate and inexperienced officers and that it would not serve the purposes of justice to determine their validity by the application of critical or technical rules with the result that rights which depend upon them and have been honestly acquired would be sacrificed."[9]

In a Note on "Sufficiency of Acknowledgment", 1952, 25 A.L.R.2d 1124, 1131 et seq., *which is the latest annotation on the subject,* we find a similar statement of the principle:

"From an early date it has been the policy of the courts to look with great leniency on certificates of acknowledgment, and to uphold them if possible. They are often taken before and certified by inexperienced and sometimes illiterate persons, and hence clerical defects or omissions and obvious technical errors will be disregarded, if the law has been reasonably and fairly complied with. A substantial compliance with the material requirements of the law is all that is necessary. If it is reasonably certain that the grantor made the acknowledgment of the instrument in question, that is sufficient. * *

"Where the statute provides that the acknowledge 'must be substantially in the following form,' substantial compliance is all that is required."[10]

It is, therefore, evident that whether an acknowledgment statute reads as does Section 1190(a) ("must be substantially") or it does not so read, the courts hold that a liberal construction is to be applied and that all that is required is "substantial" compliance.[11]

### IV.

The Validity of the Acknowledgment.

The ruling in Rolando v. Everett, 1947, 72 Cal.App.2d 629, 165 P.2d 33, does not support the conclusion of the Referee

---

9. 1 C.J.S., Acknowledgments, § 91a, pp. 851–852.

10. Note, Sufficiency of Certificate of Acknowledgment, 1952, 25 A.L.R.2d pp. 1133–1134.

11. In so doing the courts give effect to the principle declared by the Supreme Court of the United States in such cases:

"Instruments like this should be construed, if it can be reasonably done, *ut res magis valeat quam pereat.* It should be the aim of courts, in cases like this, to preserve and not to destroy. Sir Matthew Hale said they should be astute to find means to make acts effectual, according to the honest intent of the parties, Roe v. Tranmarr, Willes, 682." Kelly v. Calhoun, 1877, 95 U.S. 710, 713–714, 24 L.Ed. 544. (Emphasis added.)

The Court of Appeals for the Ninth Circuit has quoted this statement with approval and applied it in construing an Arizona acknowledgment statute: Collins v. Streitz, 9 Cir., 1938, 95 F.2d 430, 435, certiorari denied 305 U.S. 608, 59 S.Ct. 67, 83 L.Ed. 387.

that the acknowledgment in the case before us was insufficient. The court in that case was confronted with a general form of certificate under Section 1189 of the California Civil Code on a mortgage which recited that it was made by a partnership which consisted of two persons, the acknowledgment being by one partner only. The partners were Lyle B. Everett and J. L. McEachern. But the acknowledgment was by J. L. McEachern without any indication that he made it for "Everett McEachern Lumber Company, a co-partnership". The conveyance was clearly one under Subdivision (1) of Section 15010 of the Corporation Code, and *was required* to be acknowledged in the form prescribed by Section 1190(a) of the California Civil Code. We have in that case one of the *new situations* which the Uniform Partnership Act brought into being and which Section 1190(a) was aimed to cover. That decision is correct, under the facts there involved, i. e., *property standing in the name of a co-partnership conveyed by an instrument which was executed not by both members of the co-partnership, or by one "for the partnership", but by one member only as an individual.* The form of acknowledgment under Section 1190 (a), which is worded to cover such situations, not being used, the general acknowledgment was held to be ineffective. In so holding, the case states the law correctly. If there is language in the opinion that goes beyond this, we are not bound by it.

It was the rule even under the old partnership law that if an instrument conveying property is signed by *every person* who has an interest in it, it conveyed the whole title.[12]

### V.

### The Validity of the Mortgage.

■ The only thing that is missing from the certificate in the present case is the statement that the acknowledgment was "on behalf of the partnership". We think that such statement is superfluous. And even if it were necessary, its omission means nothing because the debtors cannot be heard to attack the validity of the mortgage. They received value from the bank which acted in good faith. The debtors have testified that they *were* partners and that it was their intention to *encumber the partnership property for a partnership debt.* More, the record shows there was no other undisclosed interest in the property in any one.

■ The object of the adoption of the Uniform Partnership Law was to expand the rights of the partners in dealing with partnership property. The Section referred to shows how this was done as to conveyances of property.[13] All the contingencies that could be anticipated were covered in order to allow conveyances to be made by *one, several* or *all* the partners.

It is inconceivable that the Legislature two years after the enactment of this statute, *in trying to give effect to it,* should have *curtailed* the rights conferred by it by enclosing them in a "strait jacket". Section 1190(a), as construed by the Referee, becomes "a strait jacket", because we simply cannot adapt it to the various contingencies envisioned by Section 15010 without rewriting the form every time.

■ We are bidden by the rules of statutory construction, recognized by California statutes and courts, to construe statutes reasonably [14] and not to adopt a meaning that will make them absurd.[15] If we construe Section 1190(a) as limiting the form to be used by partnerships, we make the new rights conferred by the change in the substantive law upon them and upon those dealing with partners illusory. The only reasonable interpretation to be placed upon this section is that

---

12. See cases cited under Note 8.

13. California Corporation Code, § 15010.

14. Cal. Civil Code, § 3542; Kashevaroff v. Webb, 1946, 73 Cal.App.2d 177, 183, 166 P.2d 306; County of Alameda v. Kuchel, 1948, 32 Cal.2d 193, 199, 195 P.2d 17.

15. Gage v. Jordan, 1944, 23 Cal.2d 794, 800, 147 P.2d 387; Warner v. Kenny, 1946, 27 Cal.2d 627, 629, 165 P.2d 889.


it is to be used in those cases only where one partner conveys property standing *in the name of the partnership,* that when the partnership property stands in the name *not of the partnership as an entity,* but in the name of the individuals composing it, a conveyance signed by all the partners under Subdivision (5) of Section 15010 is good, and that as to such conveyance, the only acknowledgment required is the general acknowledgment.[16] For such acknowledgment to state that it is made on behalf of the partnership would, as already stated, be superfluous.[17] Its addition would add nothing to the grant, because as the title stands in the names of the partners, the conveyance carries *all* the partnership interest.[18]

## VI.

### The Chattel Mortgage is Binding on Debtors and Receiver.

While we conclude that the chattel mortgage complied with the statutory requirements as to acknowledgment, we consider briefly the effect of failure to comply.[19]

In Teater v. Good Hope Development Corp., 1939, 14 Cal.2d 196, 93 P.2d 112, 120, the Supreme Court of California, in discussing the effect of a mortgage executed without compliance with Section 2957 of the California Civil Code, after quoting the Section, said:

"This section is modified by section 2973 of the Civil Code, making such an instrument valid be-

tween the maker and persons who, thereafter parting with value, have actual notice thereof. It is apparent that appellants have not complied with sections 2957 and 2973 of the Civil Code. "Therefore the mortgage is valid between the parties and persons who, before parting with value, have actual notice thereof. The trial court has failed to find on this issue." [20]

In sum, the Court holds that notwithstanding the failure to comply with the section, the debtor is bound by the conveyance. This being so, the trustee in bankruptcy is also bound by it, as is also the debtor in possession and the Receiver, as representatives of the creditors.[21]

The Court of Appeals for the Ninth Circuit has so ruled in Eichler v. Gray, 9 Cir., 1928, 27 F.2d 328. In a proceeding in bankruptcy, Dr. Everett Gray filed a claim against the estate based upon a trust deed. The Referee disallowed the claim upon the ground that the trust deed was not acknowledged as required by Section 2957 of the California Civil Code. The district judge overruled the Referee and held that, as the trust deed was valid between the makers, it was valid as to the trustee in bankruptcy. And the Court of Appeals sustained this view saying:

"The controlling question submitted is whether a trustee in bankruptcy has the requisite standing to challenge the validity of a mortgage in the form of a trust deed, signed and

---

16. Cal. Civil Code, § 1189.

17. It is one of the maxims of jurisprudence codified in California that "superfluity does not vitiate." California Civil Code, § 3537.

18. The courts of several states having special acknowledgment statutes have so interpreted them. See, Colpitts v. Fastenau, 1948, 117 Colo. 594, 192 P.2d 524; Rock v. Fastenau, 1950, 122 Colo. 41, 219 P.2d 781; Federal Land Bank of Columbia v. Dekle, 1933, 108 Fla. 555, 148 So. 756; Byers Bros. & Co. Live Stock Comm. Corp. v. McKenzie, 1925, 30 N.M. 487, 239 P. 525. And see, Collins v. Streitz, 9 Cir., 1938, 95 F.2d 430, cer-

tiorari denied 305 U.S. 608, 59 S.Ct. 67, 83 L.Ed. 387.

19. Cal. Civil Code, § 2957.

20. Teater v. Good Hope Development Corp., 1939, 14 Cal.2d 196, 211, 93 P.2d 112. And see, Bank of California v. McCoy, 1937, 23 Cal.App.2d 192, 196, 72 P.2d 923; Parrish v. Greco, 1953, 118 Cal.App.2d 556, 562, 258 P.2d 566.

21. Bankruptcy Act, § 5, 11 U.S.C.A. § 23; Bankruptcy Act, § 70, sub. a, 11 U.S.C.A. § 110, sub. a. See, Carey v. Donohue, 1916, 240 U.S. 430, 36 S.Ct. 386, 60 L.Ed. 726; The Collier Bankruptcy Manual, 1948, Sec. 70, pp. 362 et seq.

delivered in good faith for a present consideration, and covering real property in the state of California, upon the ground alone that the acknowledgment and the certificate thereof are void. \* \* \*

"But under the California statutes the only object of an acknowledgment is that the instrument may be recorded, and an unrecorded mortgage or deed is valid as to all persons except subsequent purchasers or mortgagees for value and in good faith, and holders of judgments affecting title under certain conditions not material here. \* \* \*

"Hence, assuming, without deciding, that the acknowledgment in question was wholly void, and that the recording was for that reason ineffective, we must still hold the trust deed valid as against the appellant trustee." [22]

A similar ruling was made more recently by the Court of Appeals for the Fourth Circuit in a case arising under Virginia law. In that case certain creditors asserted a claim of lien against ten motor vehicles owned by the bankrupt which they alleged were held by them under oral chattel mortgages as security for the payment of indebtednesses then amounting to $24,000. The Referee rejected the lien and his order was approved by the District Court. Reversing the ruling, the Court of Appeals held that, as an oral mortgage was recognized in Virginia, and the particular mortgages were entered on the State Certificate of Title issued for the motor vehicles,—they were good against the bankrupt and the trustee in bankruptcy. The Court said:

"We think an oral mortgage once registered according to law gives notice of a valid lien to creditors. What possible difference can it make to creditors and third-parties whether the lien which appears on the title certificate is evidenced by an oral mortgage or a written mortgage? Certainly, the lien registered on the title certificate gives the same notice, be the underlying mortgage oral or written. The objection that an oral mortgage is not enforceable against creditors since creditors cannot know of the existence of an oral mortgage is without force here. *No creditor can complain that he has been mislead, for the lien is registered for all to see.* \* \* \*

"In Virginia today, a man would not buy an automobile on the strength of possession, for the sole evidence of ownership of a motor vehicle is the registered title. See Thomas v. Mullins, 153 Va. 383, 149 S.E. 494. So, too, a creditor must not be mislead by possession, but must look to the title certificate, and when a lien is registered thereon, notice is given, be the mortgage oral or written." [23] (Emphasis added.)

The fundamental thought behind these rulings is that the creditors in bankruptcy whom the trustee represents, are not the type of creditors as to whom instruments not executed in accordance with statutes like Section 2957 of the California Civil Code are declared to be void.

22. Eichler v. Gray, 9 Cir., 1928, 27 F.2d 328, 329.

23. Staunton Industrial Loan Corp. v. Wilson, 4 Cir., 1951, 190 F.2d 706, 709–710. In the prior case, Janney v. Bell, 4 Cir., 1940, 111 F.2d 103, on which this ruling is based, the Court said:

"To summarize, since the bankrupt-trustee here stands in the shoes of *a judgment creditor with an execution returned unsatisfied, and since such a judgment creditor has no lien on any specific property*, it must follow that the claim of the bankrupt-trustee to the motor vehicles in question cannot prevail against the claim of the deed-trustee who had previously acquired both possession of, and a lien on, the motor vehicles in question, with the added rights as to those motor vehicles of a pledgee." 111 F.2d at page 110. (Emphasis added.)

In effect, these cases hold that a general creditor, even one who, like the trustee in bankruptcy, is considered *a judgment creditor*, is not the type of creditor against whom such instruments are void.

### Conclusion.

It follows that the Referee was wrong for two reasons: (1) He misinterpreted and misapplied Section 1190 (a) of the Civil Code of California, because it does not apply to a situation such as confronts us here, where the property is in the names of two individuals who compose the partnerships and the encumbrance is actually made by them; and (2) assuming that the acknowledgment is defective, it is nevertheless binding upon the debtors, receiver (or trustee).[24]

Finding 4 of the Referee, holding that the chattel mortgage to the bank is invalid because of the invalidity of the certificate of acknowledgment, is set aside as being clearly erroneous, and an erroneous application of the law to the undisputed facts in the record.[25]

Conclusion of Law I of the Referee that the bank is merely an unsecured creditor is also erroneous for the same reason and is also set aside.

The Order of the Referee, and especially Paragraph 1 which holds that the chattel mortgage to the bank is invalid, and that the bank is only an unsecured creditor, is reversed. The Court finds that the chattel mortgage is valid, that it was executed in conformity with the law, and that it is a valid and subsisting encumbrance upon the personal property described in it,—to the extent of the unpaid portion of the promissory notes which it was given to secure, and that, to that extent, the bank is a *secured creditor* and is to be so considered in any future proceedings in this case—by way of ar-rangement or upon adjudication—in the determination of the priority of claims.

Formal Order to follow.

---

24. See cases cited in Note 21. And see, Cal. Civil Code, § 2973; Treat v. Burns, 1932, 216 Cal. 216, 217, 13 P.2d 724.

25. The Collier Bankruptcy Manual, 1948, Sec. 39.11, p. 423. And see, Weisstein Bros. & Survol v. Laugharn, 9 Cir., 1936, 84 F.2d 419; In re Euclid Doan Co., 6 Cir., 1939, 104 F.2d 712, 715; Carr v. Southern Pacific Co., 9 Cir., 1942, 128 F. 2d 764, 768; In re Kansas City Journal-Post Co., 8 Cir., 1944, 144 F.2d 791, 807; Sheldon v. Waters, 5 Cir., 1948, 168 F. 2d 483, 485; Boyce v. Chemical Plastics, 8 Cir., 1949, 175 F.2d 839, 841; Gordon v. Woods, 1 Cir., 1951, 189 F.2d 76; Simon v. Schaetzel, 10 Cir., 189 F.2d 597; In re Berberich, 7 Cir., 1951, 190 F.2d 53; Wynne v. Boone, 88 U.S.App.D.C. 363, 191 F.2d 220, 222–223; Larsen v. Marzall, 1952, 90 U.S.App.D.C. 260, 195 F.2d 200, 202. And see the writer's opinions in Re Alberti, D.C.Cal.1941, 41 F.Supp. 380, 382; In re Car Leasing of America, Inc., D.C.Cal.1953, 109 F.Supp. 642, 643.